## In re SIMPSON MFG. CO.

(Circuit Court of Appeals, Seventh Circuit. April 12, 1904.)

No. 1,033.

1. SALE—RECOVERY OF PROPERTY FROM RECEIVER—CONDITIONAL DELIVERY.

Evidence considered, and *held* not to entitle the seller of a machine to a corporation, which later became bankrupt without having settled therefor, to recover the machine from the receiver in bankruptcy on the ground that the sale was conditional, and the machine was not accepted by the bankrupt, but to show that it was delivered under a verbal contract for its unconditional sale, and that objections thereto by the president of the bankrupt were made for the sole purpose of obtaining delay in settlement, the company being at the time in financial difficulty.

Appeal from the District Court of the United States for the Northern District of Illinois.

Hill, Clarke & Co., the appellants, filed in the bankruptcy proceedings in the court below an intervening petition asking for the return to them by the receiver in bankruptcy of a certain radial drill, with a belt drive, speed shaft, and other attachments, which machinery, as is alleged, they had shipped to the bankrupt at Winthrop Harbor, Ill., on January 14, 1902, and for which, if the machinery should be accepted by the bankrupt, they were to receive $950 in six notes, each for the sum of $158.33, payable at short dates thereafter. They allege that the machinery was never accepted by the bankrupt; the notes were not signed, but were returned to the petitioners unexecuted; and that they were notified by the bankrupt, prior to the appointment of the receiver, that the machinery was not acceptable to it. Under a creditors' bill in the state circuit court for Cook county, Ill., a receiver was appointed of the bankrupt on April 5, 1902, and upon subsequent proceedings in bankruptcy the same person was appointed receiver by the bankruptcy court on June 16, 1902, and took possession of the property in question, with the manufacturing plant of the bankrupt at Winthrop Harbor. The receiver answered the petition, claiming lawful possession of the property, and putting at issue the allegations of the intervening petition. The matter was referred to a referee in bankruptcy, who, on July 7, 1902, filed his report, with the evidence taken before him, recommending that the petition be dismissed without prejudice to the right of the interveners to file their claim as a general claim against the bankrupt's estate. Exceptions were filed to this report, which, on the 22d day of July, 1903, were overruled, the report confirmed, and the intervening petition dismissed. From this decree the appellants, on the 29th of July, 1903, prayed and were allowed an appeal to this court. The evidence touching the facts involved is referred to in the opinion of the court.

Lester H. Whipp, for appellant.

Eugene Stewart, for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

JENKINS, Circuit Judge (after stating the facts as above). The question here is whether the machinery in question was unconditionally delivered to and accepted by the bankrupt, or whether the sale was a conditional one, under which the machinery was delivered to the bankrupt for trial and approval, and not accepted. We have recently had occasion to consider the rule with respect to the passing of title in the case of machinery delivered on trial. In re George M. Hill Company, 123 Fed. 866, 59 C. C. A. 354. In that case there was a written agreement, by the terms of which the machine was delivered,

which the purchaser agreed to buy and pay for when the machinery was running satisfactorily; the title and right of possession to remain with the seller until the machine was fully paid for in cash. We there held there must be an acceptance by the buyer; that mere receipt did not constitute acceptance, which comprehends both physical receipt and mental assent; that the purchaser had right of investigation and of reasonable opportunity to determine whether the machine would work satisfactorily. We also endeavored to state the rule with respect to the inquiry whether an expressed dissatisfaction by the vendee was based upon reasonable ground and was rested in good faith, to the effect that, if the purchaser be in fact satisfied, but fraudulently and in bad faith arbitrarily or capriciously declared dissatisfaction, and the contract had in fact been performed by the vendor, the purchaser was bound to accept. But in that case we found as a fact that continuously from the receipt of the machine the bankrupt refused to accept it; that the question was not whether he was justified in the refusal, but whether he did in fact refuse; and, finding such continued refusal, whether it was justifiable or not, the bankrupt could not be heard to say, as against the vendor, that it accepted what it constantly declared it would not accept, and could not take advantage of its own bad faith and fraud; and in that respect the receiver of the bankrupt stood in the shoes of the bankrupt, and had no higher right to the property than the bankrupt could assert.

The questions here to be resolved are questions of fact—whether the sale was a conditional sale, whether there was an acceptance of the thing sold. In December, 1901, a verbal contract was made in respect of the machinery. The first negotiations were between Simpson, the president, and Bolen, the treasurer, of the bankrupt, on the one hand, and Sammons, the manager, and Wigglesworth, a salesman, of Hill, Clarke & Co., upon the other hand. There is some conflict or confusion in the testimony with respect to the details of the conversation. The machine was examined, and its working was exhibited to the proposing purchasers. It was equipped with an electric motor so as to show the exact working of it. Mr. Sammons testified that, having settled upon the terms of payment, provided the credit of the proposing purchasers was satisfactory, with respect to which he would inquire, he was asked what guaranty could be given, and he answered that the appellants would guaranty the machine to be as represented and to do the work they wanted it for, otherwise they were at liberty to return it. He also testified, "I stated to him [Simpson] that we would ship the machine, and guaranty it to be as represented, and when he was satisfied that it was so he could settle for it upon the terms that we had agreed upon." Mr. Simpson, the president of the bankrupt, who testified for the intervening petitioners, states the first conversation to be that he looked into this particular machine, and thought it would be about what he wanted; that he made an arrangement with Hill, Clarke & Co. by which the bankrupt would purchase that machine, and the terms upon which the purchase might be made. He states another conversation before the delivery of the machine; that because the machine had not been presently delivered he called to ascertain the reason; that the appellants

stated to him that they were not satisfied with the machine; that they had to experiment with it; that it was taken back to the end of the store, and experimented with, and they could not possibly ship it in the condition it was in; that they told him that the five-foot arm was so heavy at the bottom of the machine that it caused friction so that it would not turn easily, and they arranged for a friction roller on the bottom end of the stub to relieve the friction; that he expressed doubt as to the feasibility of the friction roller; that he said he would take the machine provided that "the swing of that arm would not bother us, and, if it didn't work any better, we would not have it at any price." Bolen, the treasurer, testifying on the other side, says that he was present at the appellants' place of business but once, and that was when the four persons named were there; that the working of the machine was exhibited to them, and it was decided to purchase it if satisfactory terms could be made, upon which they settled; and that not a word was said with respect to shipping the machine on trial. Wigglesworth, the salesman of the appellants, who was present at the first conversation, was not called as a witness.

It is clear that at this first conversation there was no conditional sale, for neither witness testifies thereto. A conditional sale, if one there was, must rest upon the testimony of Simpson with respect to the second conversation, and to which he alone testifies. According to his story, the appellants objected to sending the machinery at that time because they found that the five-foot arm was so heavy on the stub on the bottom of the machine that it caused friction and would not turn easily, and a friction roller was arranged for this bottom end of the stub, and that Simpson said he would take the machine provided "the swing of the arm would not bother us, and if it didn't work any better we would not have it at any price." The next that is heard of the matter, the machine is shipped to the bankrupt on the 14th of January, 1902, and placed in its plant, and put to use therein. The communications thereafter were had by correspondence alone. Twenty-eight days after the shipment, and on the 11th of February, 1902, the appellants wrote the bankrupt, inclosing a statement of account and notes for signature to cover the amount according to the terms of the sale, and suggesting that, as the first one would expire in a day or two, it would be well to send a check for the amount specified in that note. On February 15, 1902, the bankrupt, by Simpson, its president, answered this letter, stating that:

"While the machine in the main is a very good one, yet it has two very serious defects that should be remedied before settlement; one is the old trouble of swinging easier, or at least swinging easy enough to make it a practical machine. We have ideas on this score, which we think would be of value to you, but we think it will take time and money to make the necessary changes on the machine; and the other, which is probably the greater fault, is that it has only about 28″ movement on the head. When the spindle head is moved up towards the post as far as it will go, the change cannot be made on the speed. It seems to us that the mechanism that produces the change on the speed, which is the same thing as changing to the back gear, and vice versa, could be operated from the other side of the spindle arm. This is a matter we would like you to take up, and see what could be done to remedy it."

On the 18th of February, 1902, the appellants wrote to the bankrupt as follows:

"Replying to your valued favor of the 15th regarding radial drill would say that if it still continues to bother you in swinging too hard, we can send you another roller and holder for the same, and you can put these at the bottom of the column in front. This will carry all the weight on these two rollers, and we think it will give you no further trouble in regard to swinging.

"Regarding the movement of the head, would say that this is about the same as any other universal radial, and is fully as much, if not more than the Baush or Prentice style, which simply swings the arm and not the column.

"In regard to the handle for changing the speed, would say that we discovered a short time ago that the head interfered with this handle when in its inner position. However, by taking this handle out and putting in a small ball handle you will find that the head will pass right over it. In fact, that is what we are now doing, and we should be glad to send you a small ball handle to put in yours, or you can put in one yourselves and remedy the trouble very quickly. Of course it would not be a very serious to operate this lever from the back, but still it would necessitate running around the machine, which we desire to prevent. By having this short ball handle, it enables the operator to change this from the front, and does not interfere with any other motion.

"Kindly let us hear from you as to whether we shall get out another roller to go down the bottom of the front of the column, and whether we shall send you the ball handle as mentioned above.

"We desire to effect a satisfactory settlement with you on this machine at the earliest possible moment, and should be pleased to hear from you by return mail."

On February 19th the bankrupt wrote to the appellants as follows:

"Your esteemed favor of the 18th instant is at hand, and we have mailed your letter to our foreman at Winthrop Harbor for consideration, and will let you know what he says."

No further letter was addressed by the bankrupt to the appellants, but the latter, on March 7, 1902, wrote as follows:

"We hand you herewith statement of account of the amount of $950.00 which was agreed to be settled for by you by giving us six notes to run 1, 2, 3, 4, 5 and 6 months respectively, and dated January 14th, the date of shipment. We have written you some time since asking you to send us these notes, but have not heard from you, and would ask that you let us have them at once together with cash in settlement of note due February 14th. Your prompt attention will oblige."

This was the end of the correspondence and of all communication, so far as the evidence discloses, between the parties. Mr. Bolen, however, testifies that Mr. Simpson never complained to him that the machine was unsatisfactory, and that 15 or 16 days after the letter of February 11th Mr. Simpson told him he did not want to execute the notes; that he did not wish them to become due right along, and he expected to make objection to the machine temporarily "until we get around to that matter a little better"; that the company was in financial embarrassment at the time, and Mr. Simpson said he "didn't want to sign those notes, for if they were signed we could not meet them." Mr. Simpson does not deny this conversation, but does not recollect it. Upon the appointment of a receiver, Mr. Simpson, without authority, took possession of all the correspondence between the parties, and delivered it to the appellants. We are not inclined to place undue weight upon the uncorroborated testimony of the presi-

dent of a company who is so manifestly a volunteer against that company. His evidence is more strenuous in the interest of the appellants than that of their own officers, and his claim that this machine was conditionally delivered is contradicted by his own acts, and by the acts of the appellants, and by the correspondence. The machine was in constant use in the plant of the bankrupt. It is somewhat strange that no complaint of the machine was ever preferred except after nearly a month's use of it, and then only in answer to a demand for payment; and after the complaint stated in his letter of the 15th of February, and after his receipt of the letter of the appellants of the 18th of February in reply, proposing to rectify the alleged difficulty, and after his answer of the 19th of February stating that he had referred the matter to the foreman for consideration, no further complaint is preferred, and the machine is continued in use without complaint for 45 days, until the affairs of his company passed into the hands of a receiver on the 5th day of April. No notice was taken of the appellants' letter of March 7th demanding settlement. This conduct fortifies the statement of Bolen that Simpson expected to make objections to the machine temporarily for the purpose of postponing payment, and that he did not wish to sign the notes, for they could not be met at maturity by reason of the financial embarrassment of the company. We are satisfied that the objections to the machine preferred by him were pretentious merely, not real, and were made in bad faith, and that there was acceptance by the bankrupt of the machine in question.

Nor are we able to find in the conduct of the appellants any evidence of a conditional sale. We may assume that they guarantied, as Sammons testified, that the machine was as represented, and would do the work for which it was designed. The appellants undoubtedly stood ready to fulfill that guaranty. They went further, and were willing and desirous to adjust this new machinery, and rectify any minor difficulties in operation that could be suggested. But their constant demands for settlement of the price to be paid clearly indicate that they then considered the sale an unconditional one, completed by delivery of the machine. After their last demand of March 7th, to which no answer was vouchsafed, they allowed the machine to remain in use by the bankrupt without objection, and without suggestion that they had further duty to perform with respect to that machine; and they had right so to conclude, because the suggestion of adjustments contained in their letter of February 18th, which they were ready to make, had been entirely ignored. We find no occasion to disturb the finding of the court below.

The decree is affirmed.