## FIDELITY FUEL CO. v. MARTIN HOWE COAL CO.

(Circuit Court of Appeals, Seventh Circuit. November 22, 1926.)

No. 3724.

**1. Sales ⊃53(1).**

In buyer's action for seller's breach of coal contract, evidence that parties contracted *held* for jury.

**2. Sales ⊃82(1)—Seller's dissatisfaction with buyer's financial responsibility must be made in good faith, and cannot be arbitrarily or capriciously declared.**

Where sales contract is subject to seller's satisfaction as to buyer's financial condition, seller must act in good faith in determining such responsibility, and dissatisfaction arbitrarily or capriciously declared does not relieve seller from contract.

**3. Sales ⊃182(1)—Seller's good faith in declaring itself dissatisfied with buyer's financial responsibility held for jury.**

In buyer's action for seller's breach of coal contract subject to seller's satisfaction with buyer's financial responsibility, evidence *held* to raise question for jury as to seller's good faith in declaring itself dissatisfied.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by the Fidelity Fuel Company against the Martin Howe Coal Company. Judgment for defendant on a directed verdict, and plaintiff brings error. Reversed, and new trial ordered.

E. B. Wilkinson, of Chicago, Ill., for plaintiff in error.

J. Sidney Condit, of Chicago, Ill., for defendant in error.

Before ALSCHULER, EVANS, and ANDERSON, Circuit Judges.

EVAN A. EVANS, Circuit Judge. Plaintiff brought this action to recover damages for alleged breach of contract. The District Court directed a verdict for defendant, and this writ of error is to review the judgment dismissing the action. More specifically stated, the question for us to determine is whether the evidence justified the court in submitting to the jury two questions: (a) Did the parties enter into a contract? And, if so, (b) was defendant's refusal to deliver the coal thereunder justifiable? Other issues, such as damages, etc., were clearly for the jury.

[1] Defendant is a Chicago coal company, and plaintiff is a corporation which, among other things, sells coal in and about Green Bay, Wis. It appears that on May 10, 1920, one Brill, president of plaintiff company, personally negotiated with defendant's representatives in Chicago for the purchase of 1,500 cars of Indiana mine run soft coal. As a result of these negotiations, defendant gave Brill a letter, reading as follows:

"May 10, 1920.

"Fidelity Fuel Company, Green Bay, Wisconsin—Gentlemen: We will furnish you five (5) cars per day of Pike county, Indiana, mine run coal at $3 per ton f. o. b. cars mines, for contract shipments, for one year, starting May 20, 1920, and it is understood that this will be shipped at the rate of thirty (30) cars per week. This, of course, is subject to the usual contingencies of strikes, fires, and other causes beyond our control, including embargoes, and is also subject to our satisfaction as to your financial responsibility.

"Very truly yours,

"Martin-Howe Coal Co.,

"F. A. McCleavy, Sales Manager."

On May 17th, plaintiff wrote defendant as follows:

"Martin-Howe Coal Co., McCormick Bldg., Chicago, Ill.—Gentlemen: Herewith inclosed you will please find orders which we would like to have you make immediate shipment. We will send you from time to time more orders, and trust that you will take care of same to the best of your ability. Confirming telegram of even date, and awaiting your acknowledgment, we wish to remain,

"Very truly yours,

"Fidelity Fuel Co., Inc.,

"By Simon Brown, Sec'y."

Included in the letter were orders for 48 cars to be shipped at once to A. W. P. Co., Appleton, Wis. Further orders, aggregating 150 cars, were given by plaintiff on May 18th and 19th. These orders were for coal of the kind and character designated in defendant's offer of May 10th.

If this were the entire transaction, no difficulty would be experienced in spelling out of these letters a contract subject to defendant's "being satisfied as to plaintiff's financial responsibility." The record discloses other evidence, however, in the way of telegrams, which were somewhat confusing. They tended to establish defendant's contention that its letter of May 10th was merely an invitation for bids.

For example, on May 17th, in addition to writing the letter aforementioned, plaintiff wired defendant as follows: "Book us 500 cars Indiana mine run three dollars *Answer.*" And on May 19th plaintiff wired defendant: "Confirmed telephone conversation this morn-

ing We accept fifteen hundred cars Indiana mine run three dollars f. o. b. mine *Wire acceptance.*"

The confusion resulting from these telegrams, however, was removed by the oral testimony of Mr. Brown, plaintiff's secretary. He stated that on May 19th he called defendant on the long-distance telephone and explained the sending of the letter and the telegrams. He testified: "I asked McC. if he was going to take care of me on the 500-car order on the same basis as the 1,500-car contract, and McC. said that he would. I asked him when he was going to start shipments on the 1,500-car contract, and he said right away. I then asked Mr. McC. if he wanted me to confirm this telephone conversation, and the acceptance of the 1,500-car contract, and he said that would be fine. He also told me, in answer to my question, that he would send me an acknowledgment of the 500-car order of May 17. This conversation took place on the morning of May 19."

Assuming this testimony to be true (and its verity was for the jury), it is apparent that defendant's offer of May 10th was accepted by plaintiff's letter of May 17th. Plaintiff's wire of May 17th was an offer to buy 500 more cars of coal. The orders sent by plaintiff to defendant were all on the contract made by defendant's letter of May 10th, and plaintiff's acceptance of May 17th. Upon this record, if the jury believed Brown, plaintiff was entitled to recover, unless the evidence justified defendant in refusing to proceed, because not satisfied that plaintiff was financially responsible.

[2] While the authorities are not unanimous on the subject (6 R. C. L. 953), this court, in In re George M. Hill Co., 123 F. 866, 59 C. C. A. 354, and in In re Simpson Mfg. Co., 130 F. 307, 64 C. C. A. 553, following the great weight of authority (see American Music Stores v. Kussel, 232 F. 306, 146 C. C. A. 354, L. R. A. 1916F, 882), adopted the rule that the party to be satisfied must act in good faith in reaching his conclusion as to the financial responsibility of the other party. An expressed dissatisfaction will not relieve one party from his contract, if the determination of dissatisfaction is not real, but is arbitrarily or capriciously declared. In thus concluding we are limiting this holding to those contract cases which involve the financial responsibility of the other party.

[3] As to part of the evidence bearing on this issue of good faith there was a sharp conflict. Other evidence, while free from dispute, would support conflicting inferences. It would serve no useful purpose to here set forth all of the testimony. Reference will be made merely to a persuasive bit of testimony offered by the plaintiff. Brill testified that on May 27th, after the matter of credit had been up, he had a conversation with Mr. H., the then president of the defendant company. H. told him, so he says, that "McC. sold the coal too cheap; that defendant could get $5.-50, and that is the reason he would not sell him any coal."

This statement, if believed by the jury, might well have settled this question in plaintiff's favor. Certainly upon both issues the evidence was such as to necessitate a determination by a jury.

The judgment is reversed, with costs, and a new trial is ordered.