E. N. GILLESPIE, Trustee, Appellant, *vs.* THE FULTON OIL AND GAS COMPANY *et al.* Appellees.

*Opinion filed October 26, 1908.*

1. FRAUD—*defendant charging fraud in his answer must clearly prove it.* A lessor who in his answer to a bill by the lessee for injunction and accounting alleges that the lease was obtained by fraud and misrepresentation has the burden of proving such allegation by proof so clear and cogent as to leave the mind well satisfied of its truth.

2. SAME—*equity will not relieve party from obligation of contract if right to relief is doubtful.* The jurisdiction of a court of equity to restore parties to rights of which they have been deprived by fraud will not be exercised to set aside a contract made by parties on an equal footing, where the state of the proof is such that to grant the relief is as likely to be wrong as right.

3. SAME—*misrepresentation must be material and be relied upon.* In order to justify a court of equity in setting aside a contract for an alleged misrepresentation the representation must have been in the form of a statement of a material fact, which the party making it knew or believed to be false but which the other party relied upon in the belief that it was true.

4. SAME—*what representation will not avoid oil lease though false.* A representation by an oil lease speculator that he was a producer of oil and engaged in that business, even though false and relied upon by a land owner when making an oil lease to such speculator, is not of such a material character as to avoid the lease, where there was no promise or agreement that the lessee would personally devote his services to prospecting for oil.

5. LEASES—*recital of consideration cannot be contradicted for purpose of invalidating the lease.* In actions to recover the consideration, and in bills for specific performance and the like, courts will inquire into the actual consideration and whether the same has been paid, notwithstanding the recital in the instrument acknowledging the receipt of the consideration; but proof that the consideration was not paid is not admissible for the purpose of invalidating the instrument.

6. SAME—*a lease, of unlimited duration, of homestead premises must be executed and acknowledged by wife.* A lease of unlimited duration, giving the lessee the right to enter upon land occupied as a homestead and prospect for oil and gas and erect necessary structures and pipe lines, etc., is a conveyance of such an interest in the homestead as is void, as to the homestead estate, unless exe-

cuted and acknowledged in accordance with the statute providing for a release of homestead.

7. SAME—*lessor must properly plead and prove facts showing he is entitled to a homestead.* A lessor who seeks to avoid an oil lease upon the ground that it was a lease of his homestead and was not acknowledged and executed as required by statute must plead and prove all the facts which will entitle him, under the statute, to such homestead.

8. SAME—*oil lease construed as to when rent is payable.* Under an oil lease for a term of five years or longer, providing that a test well shall be drilled within twelve months, and in case no well is completed upon the premises within twelve months the lessee shall pay to the lessor a rental of twenty-five cents per acre per year, "to be paid annually, counting from the expiration of the said twelve months," the lessee is not required to pay rent the first year nor to pay in advance for the second year, and he has all of the second year to make payment before being in default.

9. SAME—*oil and gas lease is assignable.* An oil and gas lease is assignable, as leases are assignable both by the common law and under the statute.

10. SAME—*what is a sufficient payment of rent to lessor.* The depositing of the money for rent in a bank to the credit of the lessor is a sufficient payment of rent to the lessor to avoid forfeiture, where the lessor, upon being notified that the money had been left at the bank, refused to accept it, basing his refusal upon the ground the lease was void.

11. TENDER—*what is a sufficient tender of rent.* If the lessor, during the time the lessee is entitled to pay rent, repudiates the lease by re-leasing the premises to others, it is a sufficient tender, in equity, if the lessor, before the time the rent is overdue, files a bill in equity, against the lessor, in which he tenders performance of all the conditions and covenants by him to be performed, and avers that he is ready and willing to go on in good faith and perform all his covenants.

12. EQUITY—*equity has jurisdiction to prevent waste at suit of assignee of oil lease.* A court of equity has jurisdiction to prevent waste and irreparable injury at the suit of the assignee of an oil and gas lease against an adverse lessee.

13. APPEALS AND ERRORS—*when the question of homestead is waived.* In a proceeding by a lessee against the lessor for injunction and accounting, if the lessor desires to avail himself of the defense that the lease was a lease of unlimited duration and covered the homestead premises of the lessor and that the homestead had not been released as provided by statute, he should, when the case is taken by the lessor to the Appellate Court, move to trans-

fer the cause to the Supreme Court upon the ground that a free-hold is involved, and if he fails to do so or to in any manner question the jurisdiction of the Appellate Court he waives such defense and cannot avail himself thereof in the Supreme Court.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Crawford county; the Hon. E. E. NEWLIN, Judge, presiding.

. E. N. Gillespie, trustee, filed a bill in the circuit court of Crawford county against the Fulton Oil and Gas Company, S. C. Bowman, T. N. Rogers and Walter Hennig, praying for an injunction, an accounting, the appointment of a receiver and the cancellation of certain oil and gas leases executed by S. C. Bowman and wife to Rogers and by him assigned to Walter Hennig. All of the defendants below answered the bill, and replications having been filed, the cause was heard by the court upon the bill, answers, replications and proofs submitted in open court. The circuit court found the issues for the defendants and dismissed the complainant's bill for want of equity. This is an appeal from a judgment of the Appellate Court for the Fourth District affirming the decree of the circuit court.

In his amended bill, upon which the cause was heard, appellant alleges that on the 17th day of May, 1905, appellee S. C. Bowman, then being the owner in fee of the west side of the north-west quarter of the north-east quarter and the north-east quarter of the north-west quarter of section 11, township 8, north of range 14, west, executed a lease in writing, commonly called an "oil and gas lease," to T. E. Pierce for said premises, for the purpose of being drilled and operated for oil and gas, for a term of five years from the date thereof and as much longer as gas or oil should be found in paying quantities on said premises, and that such lease was duly assigned for a valuable consideration, in writing, on the 14th day of October, 1905, by T. E.

Pierce to appellant, Gillespie, in trust, for the joint benefit of himself and others, and that said lease, together with the assignment thereof, was duly recorded in the recorder's office of Crawford county, State of Illinois, on the 15th day of June, 1906. The bill recites the several provisions of the lease according to their legal effect and makes reference to a copy of the lease, which is attached to the bill and is as follows:

"In consideration of the sum of one dollar, the receipt of which is hereby acknowledged, S. C. Bowman, party of the first part, hereby grant and lease unto T. E. Pierce, parties of the second part, all the oil and gas in and under the following described premises: All that lot of land situated in the township of .......... in .......... county, State of Illinois, described as follows, to-wit: West side of N. W. of N. E. ¼ of Sec. 11, T. 8, R. 14, west; and N. E. ¼ of N. W. ¼ of Sec. 11, T. 8, R. 14, west, all in Crawford county, Illinois, containing fifty acres, more or less, together with the right to enter thereon at all times for the purpose of drilling and operating for oil and gas, and to erect and maintain all buildings and structures and lay pipes necessary for the production and transportation of oil and gas. To have and to hold the above described premises for five years from the date hereof, and as much longer as oil or gas is found in paying quantities on said premises, on the following conditions:

"Second parties shall, within twelve months from the date hereof, drill a test well upon said premises. If gas is found in sufficient quantities to transport, second parties agree to pay first parties the sum of $100 per year for the gas produced from each well from which gas is transported, payable annually, when a market is found for the gas, and first parties to have gas, free of cost, to heat and light one dwelling house, to be transported at first party's cost. If oil is found in paying quantities the first party shall have one-eighth part of all oil produced and saved from said

premises, to be delivered in the pipe line with which second parties shall connect their wells. The party of the first part grants the further privilege to the party of the second part of the right of way over and across said premises to the place of operating, together with the exclusive right to lay pipe lines to convey oil and gas, the right to remove any machinery and fixtures placed on said premises by them, doing the least possible damage to said premises; and the party of the first part reserves the right to use and enjoy said premises for the purpose of tillage and all purposes not inconsistent with the objects and purpose of this lease, except such part as may be necessary for the purpose above specified. The second parties to lay all pipe deep enough under the ground so as not to interfere with the cultivation of the soil. Second party hereby agrees to pay any damage done to growing crops by the laying pipes and to leave the tiling in as good order as the same is found. In case no well is completed on said premises within twelve months from this date, the parties of the second part shall pay the party of the first part a rental of twenty-five cents per acre per year, to be paid annually, counting from the expiration of said twelve months. It is further agreed that in case no paying well is completed on said premises within five years from the date hereof, this grant shall be null and void without further agreement of the parties hereto. No well shall be drilled within two hundred feet of any dwelling house without a written permit from the first party. The second parties shall have the right to use sufficient gas and water to run all machinery for operating said wells and the right to remove all its property at any time, but without interference with first party's water supply. Upon the abandonment by second party of the premises, or upon the expiration of the rights and privileges of the second parties under the provisions hereof, the second party agrees to execute full release to party of first part. The parties of second part hereby agree to complete test well in ...........

county, Illinois, on or before the .......... 190.., or forfeit all rights under this lease. It is understood between the parties of this agreement that all conditions between the parties hereunto shall extend to their heirs, executors, administrators, successors and assigns.

"In witness whereof the parties hereunto have set their hands and seals this 17th day of May, 1905.

S. C. BOWMAN, (Seal.)<br>T. E. PIERCE. (Seal.)"

Witness: T. E. Pierce.

The following is a copy of the assignment of the lease as set out in the amended bill:

"This agreement, made and entered into this 14th day of October, 1905, by and between T. E. Pierce, ........ Ill., first party, and E. N. Gillespie, of Freeport, Pa., of the second party:

"*Witnesseth:* That the said party of the first part, for and in consideration of the sum of one dollar and other consideration to him in hand paid by the party of the second part, has sold, transferred and assigned and set over all his right, title, interest and claim on the within lease.

"In witness whereof the party of the first part has set his hand and seal the day and year above mentioned or written.

T. E. PIERCE."

A certificate of acknowledgment of a notary public appears on this instrument.

After averring that appellant had kept and performed all of the covenants in said lease, and that he was able and willing to go on in good faith with the prompt performance of all of the covenants in said lease to be by him performed, the bill charges that on the 20th of August, 1906, without the consent or authority of appellant or any one interested with him in said lease, and in violation of appellant's rights under his lease, appellee S. C. Bowman pretended to lease said premises for oil and gas to T. N. Rogers, which said lease to Rogers was duly recorded in the recorder's office of Crawford county on August 31, 1906, which said pretended lease to T. N. Rogers the bill avers was taken with notice and knowledge of the prior lease given to T. E. Pierce and by him assigned to appellant. The bill alleges that on De-

cember 19, 1906, after the filing of the original bill herein, a second lease from said Bowman to said T. N. Rogers was filed for record; that said second lease was acknowledged September 8, 1906, and is in all respects similar to the first lease, except in the first lease there was an agreement that Bowman, the lessor, would stand between the said lessee and his assigns and Pierce and pay all costs of any litigation that might be instituted on account of appellant's lease; that the second lease made to appellee Rogers omitted this indemnity clause but the same agreement was made by a separate writing; that the first lease made to Rogers was by him assigned to the Fulton Oil and Gas Company and the second lease to Rogers was assigned to Walter Hennig. The amended bill charges that the said Walter Hennig, either on his own account or on behalf of the Fulton Oil and Gas Company, conspired with said Bowman to injure and defraud the said complainant by wrongfully taking possession of the premises and boring and completing thereon a producing oil well of great value, from which large quantities of oil have been taken, and that said appellees are about to drill other wells on the premises, and have done, and are doing, irreparable damage to the premises and to the estate of appellant and his associates by depriving them of the oil and gas on said premises, which appellant claims he is entitled to; that appellee Bowman refuses to permit the appellant and his associates to go upon the premises and to operate for oil and gas under said lease. The bill avers that appellant has no knowledge as to the quantity of oil that has been taken from the premises by the appellees, but avers that it will amount to several thousand dollars. The bill prays for an injunction, for an accounting, for a receiver, and the cancellation of the oil leases, and the record and assignment thereof executed by appellee Bowman to Rogers, (now held either by Hennig or the Fulton Oil and Gas Company,) as clouds upon the title of appellant and his associates.

The answers of the appellees deny the execution of the Pierce lease, and charge that if the same was executed it was illegal and void for the following reasons: (1) That Pierce obtained his lease from Bowman through fraud, deceit and falsehood in the manner of procuring Bowman's signature; (2) that Bowman never executed, completed or delivered said lease; (3) that the premises described in the Pierce lease were the homestead of Bowman and family and the homestead rights were not waived in said lease, and Bowman's wife did not join in the execution of the same; (4) that complainant has a complete and adequate remedy at law; (5) that even if the lease had been a valid lease from Bowman to Pierce, it has become forfeited and been allowed to lapse by non-performance of its terms by the lessee and his assignees; (6) that the said assignment is insufficient and invalid and conveyed no interest from the said Pierce to the said complainant, because this lease conveyed a part of the fee, and therefore could not be conveyed or transferred by simple assignment.

The circuit court sustained, by special findings, all of the foregoing grounds of defense, and its decree has been affirmed by the Appellate Court for the Fourth District.

The evidence is stated in the discussion of the points to which it relates, and a further reference to the answers of appellees, somewhat more in detail, is made in the opinion which follows this statement.

GEO. B. GILLESPIE, and A. M. FITZGERALD, (CHARLES GIBBS CARTER, HAMLIN, GILLESPIE & FITZGERALD, and CALLAHAN, JONES & LOWE, of counsel,) for appellant.

GEORGE W. JONES, for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

*First*—The legality of appellant's lease is challenged on the ground, among others, that its execution was procured through fraud and false representations. The evidence

shows that appellant's lease was executed at Bowman's residence. The only persons who testify to the occurrences at the time the lease was executed are Pierce and Bowman. Pierce testifies that he was down in Bowman's neighborhood looking for leases and that Bowman's father-in-law sent him over to see Bowman. Pierce's business was taking leases for the purpose of re-selling them for a profit. He was not in the business of producing oil. Pierce stayed over night at the Bowman house, and the lease in question was executed next morning at the breakfast table, while Mrs. Bowman was clearing away the dishes. Pierce denies having made any representation or statement to Bowman except what is in the lease. He denies that Bowman said anything to him about the payment of the dollar mentioned as a consideration for the lease, at that time. Bowman testifies that he signed the lease at the time and place mentioned by Pierce. He testifies, also, that no part of the consideration was paid in cash at that time, and that he demanded the dollar and that Pierce refused to pay it. In his original account of what occurred at the time the lease was signed he says nothing about any representations that Pierce made in regard to his business. Further on in his testimony, in response to a question by his counsel drawing his attention to what Pierce said about his business and whether or not he was in the business of oil development, Bowman testified that, "Pierce represented himself as an oil producer, and said that they were operating in Clark county, about three or four miles from Martinsville; he told the place and told the farm, but I disremember the man's name." This is the only evidence in the record which has any tendency to sustain the allegation of fraud and misrepresentation. The burden of proof upon this issue was upon appellees. The allegation that the execution of the lease was procured by fraud having been made by appellees in their answers, it devolved upon them to sustain that charge by proof so clear and cogent as to leave the mind

well satisfied that the allegation is true. *Shinn* v. *Shinn*, 91 Ill. 477; *English* v. *Lindley*, 194 id. 181.

While the jurisdiction of courts of equity to restore parties to rights of which they have been deprived through fraud is one of the most salutary which these courts exercise, still this jurisdiction is not to be called forth and solemn contracts made by parties upon an equal footing set aside where the state of the proof is such that to grant the relief is as liable to be wrong as right  If such were the practice, it might often happen that the remedy provided would be more oppressive than the evil sought to be cured. In the case at bar we see no reason why the unsupported statement of Bowman, made in answer to a leading and suggestive question of his counsel, should be entitled to more weight than the statement of Pierce, the other party to the transaction.  Pierce had assigned the lease, and so far as appears he has no interest now in the result of this litigation.  His testimony cannot be rejected on the theory that he is an interested party, without invoking a rule that would apply with much greater force to Bowman.  The general presumption that all men act honestly and fairly must be overcome by the party who alleges the contrary. Bowman's evidence on this question is materially impaired by the following circumstance:  No well having been sunk on the Bowman farm within one year, appellant deposited $12.50 in a bank nearest to Bowman's residence and with which he had transacted some business, to pay one year's rent at twenty-five cents per acre, in accordance with the requirements of the lease.  The bank at Annapolis with which the money had been left immediately notified Bowman that the money had been left for him, and in reply to this notice Bowman wrote the bank under date of May 27, 1906, saying that he would not accept the money on that lease because the lease was null and void, and assigned the following reasons:  "First, it is not signed by the wife of S. C. Bowman, and the premises therein described being a

homestead, renders it absolutely void without she joins in the execution thereof; second, no well was commenced or completed thereon, as stipulated therein, within twelve months, nor no rental paid thereon within that period of time." The apt language employed in stating the reasons why the lease was void is proof that Bowman either possessed more legal knowledge than the ordinary layman, or he had procured legal advice before writing this letter. Whatever may be the fact in this regard, it is a matter of surprise that in stating the grounds with such particularity and legal precision which he relied on as rendering the lease void, he entirely omits any reference to fraud and misrepresentation. His unexplained failure to mention fraud and misrepresentation in this letter tends to discredit his testimony on that subject given at the trial. In our opinion the evidence in this record is wholly insufficient to sustain the charge of fraud by that degree of proof required to establish such charge.

There is, however, another reason why this defense can not prevail. A misrepresentation which will warrant a court of equity in setting aside a contract must contain the following elements: First, its form must be a statement of fact; second, it must be made for the purpose of inducing the other party to act; third, it must be untrue; fourth, the party making the statement must know or believe it to be untrue; fifth, the person to whom it is made must believe in and rely upon the truth of the statement; sixth, the statement must be material. Pomeroy's Eq. sec. 876; *Prentice v. Crane,* 234 Ill. 302.

When carefully analyzed, the statement attributed to Piercé by Bowman will be found wanting in at least two of the essential elements of a misrepresentation against which a court of equity will grant relief: (*a*) There is no proof whatever that Bowman believed in and relied upon the truth of the statement. We have read Bowman's evidence in the abstract, in appellees' additional abstract and in the record,

and there is no statement in it anywhere to the effect that he believed or relied upon the statement attributed by him in his testimony to Pierce, to the effect that Pierce was an oil operator or producer and that he was then engaged in operating in Clark county. (*b*) The statement is also wanting in the essential element of materiality. The lease in question was not a contract for personal service to be rendered by Pierce to Bowman. It was a contract the execution of which would necessarily require the co-operation of several persons. Bowman's object no doubt was to have his land prospected for oil and gas. Whether this was done by Pierce personally, or by others whom he might employ or to whom he might assign the lease, could not make the slightest difference to the land owner. In this connection it is also to be noted that Bowman does not testify that Pierce made any promise or representation to the effect that he would personally develop the Bowman land, the only statement being that he was a producer of oil and engaged in that business. Even if the statement was proven to have been made, in that clear and convincing manner required by the law, and if the proof showed that Bowman believed in and relied upon such statement, it is clearly a matter outside the real consideration of the contract, and is not, for that reason, such a misrepresentation as will avoid the contract.

In connection with the charge of fraud set up in the answer, appellees point out the fact that the money consideration mentioned in the lease was not paid. This is admitted by Pierce, but he denies that Bowman made any request for payment until a subsequent interview, some time after the lease was executed. Courts of equity will not receive evidence contradicting the acknowledgment of the receipt of the consideration in a sealed instrument, for the purpose of invalidating the writing. In actions brought to recover the consideration, and in bills for specific performance and the like, courts will inquire into the actual con-

sideration and whether the same has been paid, notwithstanding the recital in the instrument acknowledging the receipt of a named consideration; but it is not proper to show that the consideration was not paid, to defeat the operation of the instrument. (Warvelle on Abstracts, p. 216; *Stannard* v. *Aurora, Elgin and Chicago Railway Co.* 220 Ill. 469; *Poe* v. *Ulrey,* 233 id. 56.) In the *Ulrey case,* above cited, which was a bill in chancery to cancel an oil lease substantially like the one involved in the case at bar, this court, on page 63, said: "But while the recital of the payment of the consideration in an instrument may be contradicted for such purposes, an acknowledgment of such payment cannot be contradicted by parol for the purpose of invalidating the instrument or impairing its legal effect as a conveyance. (*Stannard* v. *Aurora, Elgin and Chicago Railway Co.* 220 Ill. 469.) The interest of the appellee Ulrey under the lease had been assigned to the appellee the Illinois Oil and Gas Company, with the exception of one-sixteenth, and the purpose of the allegation in the bill and evidence that the one dollar was not, in fact, paid, was to invalidate the lease, which could not be done."

It is inconceivable that the money consideration mentioned in this lease was the real consideration upon which it rested. Undoubtedly the real consideration was the exploitation of the mineral resources of Bowman's farm. If the dollar was not paid, Pierce owes Bowman that sum and he has a legal remedy for the same, but the non-payment of it affords no reason for annulling the contract.

*Second*—Appellees insist that appellant's lease is void because the demised premises were, at the time the lease was executed, the homestead of the lessee, and that there is no waiver or release of the homestead in accordance with the statute, and the lease is not signed and acknowledged by the wife of the lessor. Upon this question the answer of S. C. Bowman to the amended bill contains the following averment: "The said S. C. Bowman, further answer-

ing, states that all of said premises are contiguous and are the homestead of himself and family; that in the pretended execution of said paper to said T. E. Pierce, his wife, Mrs. Carrie Bowman, did not join therein, and said paper contained no release or waiver of the estate of homestead then owned therein by this defendant, and no release, waiver or conveyance thereof was intended to be made thereof and none is contained within the body thereof or in the pretended acknowledgment thereof, and the possession thereof was never abandoned by this defendant or his said family pursuant thereto." The answer of Walter Hennig makes no reference to the homestead question. The amended answer of the Fulton Oil and Gas Company and T. N. Rogers contains the following averment on the subject of the homestead: "That the premises were occupied by Bowman and his wife as a homestead at the time of the execution of the Pierce lease, and that they were worth less than $1000."

The law is settled in this State by the cases of *Bruner* v. *Hicks,* 230 Ill. 536, and *Poe* v. *Ulrey, supra,* that a lease of unlimited duration, giving the lessee the right to enter upon land occupied as a homestead for the purpose of prospecting for oil and gas, drilling, operating and erecting the necessary buildings, pipe lines and other structures, is a conveyance of such an interest in the homestead as is void, unless such lease is executed and acknowledged in the manner provided by section 4 of chapter 52 of the Revised Statutes of 1905. In neither of the above cited cases was the question presented in the same manner that it is in the case at bar. In the *Bruner case* an issue was made up and tried as to the value of the leased premises upon which a homestead was claimed, and a finding that the premises were worth less than $1000 at the time the lease was executed was approved by this court. In the later case of *Poe* v. *Ulrey* the homestead question was held to have been waived by taking the case to the Appellate Court and not

raising the question in that court. In the case at bar. it will be seen, by reference to the portions of the answers above set out, that the defense that the premises were a homestead is not properly pleaded. Whether or not a homestead exists in the premises involved, so as to render the lease in question void, is a legal conclusion to be drawn from a consideration of the several elements which enter into the homestead, cited under section 1 of chapter 52 of the Revised Statutes. (Hurd's Stat. 1905, p. 1043.) The statute provides: "Every householder, having a family, shall be entitled to an estate of homestead, to the extent in value of $1000, in the farm or lot of land and buildings thereon, owned or rightly possessed, by lease or otherwise, and occupied by him or her as a residence; and such homestead, and all right and title therein, shall be exempt from attachment, judgment, levy or execution, sale for the payment of. his debts, or other purposes, and from the laws of conveyance, descent and devise, except as hereinafter provided."

It is a familiar and well established rule of pleading, that when a statute gives a new right or privilege under certain circumstances, conditions or qualifications, the party claiming such right must bring himself within the requirement of the statute by his pleading. He must show that he comes within the circumstances or possesses the conditions or qualifications named by the statute as requisite to the right or privilege claimed. This principle applies to a pleading which sets up the right of homestead. (Thompson on Homesteads, sec. 702; *Kitchell* v. *Burgwin,* 21 Ill. 40; *Symonds* v. *Lappin,* 82 id. 213.) In the case last above cited, which was a bill to foreclose a mortgage, to which the defendants answered setting up "that the said real estate in said bill described is the homestead upon which defendant and his family reside; that in and by said mortgage defendant does not waive his right under the Homestead law and that said mortgage debt is not for purchase

money of said real estate," this court said: "To avail of the benefits of the Homestead law it was incumbent on them to allege in their answer such facts as certainly brought them within the protection of the law. We cannot indulge in presumptions not necessarily arising from the facts alleged to aid them in this regard." The answer was held not to properly bring the homestead question before the court and a decree granting a forcelosure was affirmed.

There are no averments in any of the answers filed in this cause, of such facts as show that the premises in question were the homestead of S. C. Bowman at the time the lease in question was executed. But even if there were proper allegations in the answers to support the finding of the court below that the premises in question were a homestead, there is no proof in the record to sustain such allegations. There is no finding in this case, nor evidence upon which such finding could rest, that the premises embraced in this lease were worth $1000 or less. The Appellate Court recognized that there was no proof on the question of the value of these premises, but seems to have been of the opinion that the burden of proof was upon appellant to prove that the premises were worth more than $1000 in order to sustain his lease as to the excess. In this the learned Appellate Court is in error. The burden of proving the existence of a homestead is upon the person relying upon it. (Kales on Homestead Exemption Laws, sec. 135, and cases there cited.) The law is well settled in this State that a conveyance of a tract of land worth more than $1000, upon which a homestead exists, is valid, without a release of homestead, as to the excess over $1000 in value. (*Watson* v. *Doyle,* 130 Ill. 415; *White* v. *Bates,* 234 id. 276.) So far as the evidence in this case shows, the fifty acres of land embraced within this lease may be worth a large amount in excess of the value of the homestead. If so, the lease cannot be held invalid as to such excess because the homestead was not properly released.

There is, however, still another reason why appellees can have no advantage, in this court on this hearing, of the defense that the premises were a homestead. The homestead estate is a freehold, and if that question was relied on as a defense to the action, the appeal should have been brought directly to this court. Undoubtedly, where a party appeals a case to the Appellate Court which involves questions of which the Appellate Court has no jurisdiction he thereby waives such question, and he cannot insist in this court, on an appeal from the Appellate Court, that this court shall consider a question which the Appellate Court had no jurisdiction to consider or decide. When this case was in the Appellate Court appellees might have applied to that court for an order transferring the case to this court on the ground that a freehold was involved. Having failed to do this or otherwise question the jurisdiction of the Appellate Court, and having submitted the cause in that court for a hearing on its merits, they must, for the purposes of this appeal, be held to have waived their defense of homestead. *Poe* v. *Ulrey, supra.*

*Third*—It is insisted by appellees that even if the lease was otherwise valid it was forfeited by reason of the non-performance of its terms by the lessee and his assignees. Under this point it is contended that appellant was required to put down a well on the premises within twelve months, or, failing in that, he was required to pay twenty-five cents per acre rental on the land before the first year expired, and that no well was sunk and no rent paid during the first twelve months next after the lease was executed. This contention is based upon an erroneous construction of the lease itself. The lease provides that "the second parties shall, within twelve months from the date hereof, drill a test well upon said premises." By another clause in said lease it is provided: "In case no well is completed on said premises within twelve months from this date, the parties of the second part shall pay the party of the first part a rental

of twenty-five cents per acre per year, to be paid annually, counting from the expiration of the said twelve months." Taking these two clauses together, and in connection with the clause providing that the lease was for five years from the date thereof, it is clear that the lessee was not required to pay any rent until the expiration of the first year. At that time, if no test well was completed, the rent commenced to accrue. The lease does not require the payment of the rent in advance. Appellant would therefore have all of the second year in which to.pay his rental of twenty-five cents per acre. The evidence, however, shows that on the 16th day of May, 1906, which was one day before the first year expired, one full year's rent was paid by depositing for Bowman's use that amount to his credit in his bank. If it be said that this was not a payment to Bowman, it is a sufficient answer to such suggestion that Bowman, when notified that the money had been left for him at the bank, refused to accept the same, basing his refusal upon the ground that the lease was· void. In his letter to the bank Bowman clearly waived any duty that appellant might have been under to make a legal tender to him of rent, by indicating his purpose not to receive any rent under this lease. On August 20, 1906, Bowman repudiated appellant's lease by re-leasing the premises to others and admitting them into the possession long before the expiration of the year in which appellant had the right to make his first payment on account of rentals. Even if there had been no payment or tender of payment by appellant prior to the filing of the bill in this case, the bill was filed in December, 1906, before the second year expired, and in his bill appellant tenders performance of all of the conditions and covenants by him to be performed, and avers that he is ready and willing to go on in good faith and perform all of his covenants. This is a sufficient tender in equity. (*Webster* v. *French,* 11 Ill. 254; *Board of Supervisors* v. *Henneberry,* 41 id. 179.) The good faith of appellant in his transactions in relation

to this lease is shown by the fact that he served notice of his intention to carry out the lease on September 15. This was before any work had been done under the Rogers leases. On October 14, 1906, appellant went upon the land to meet a contractor to make a location for drilling a well. On this occasion appellant found a well in operation which had been drilled after his notice was served. Appellant had contracted with M. J. Crotty, a contractor, to drill a well on the farm in question. The evidence shows that appellees had actual notice of appellant's lease before any work was done or money expended under the Rogers leases. In fact, the lessees who drilled the well recognized the existence of appellant's lease and protected themselves against it by an indemnifying contract from Bowman.

There is no warrant in the evidence in this case for holding that appellant has forfeited any of his rights or that he has been guilty of any conduct which in equity would estop him from now asserting them.

There is nothing in the contention of appellees that this lease was not assignable. Leases are assignable both by the common law, (Taylor on Landlord and Tenant, sec. 426,) and under our statute. (Hurd's Stat. 1905, chap. 80, sec. 32.)

The contention that appellant has a complete remedy at law is untenable. Ejectment will not lie. (*Watford Oil and Gas Co.* v. *Shipman,* 233 Ill. 9.) Equity has jurisdiction to prevent waste and irreparable injury at the suit of an assignee of an oil and gas lease against an adverse lessee. *Indianapolis Natural Gas Co.* v. *Kibby,* 135 Ind. 357; 35 N. E. Rep. 392; *Allegheny Oil Co.* v. *Snyder,* 106 Fed. Rep. 764; *Logan Natural Gas and Fuel Co.* v. *Great Southern Gas and Oil Co.* 126 id. 623; *Allegheny Oil Co.* v. *Bradford Oil Co.* 21 Hun, 32.

Under the law as we understand it and the evidence in this record the decree cannot be sustained on the ground that the execution of the lease was procured through fraud

and misrepresentation, for the reasons already stated; nor because the premises were the homestead of the lessor, since there is neither pleading nor proof of such facts as are necessary to bring Bowman within the homestead statute. Appellees' contentions that the lease has been forfeited, that the same is not assignable, and that the remedy, if any exists, is at law, are all wanting either in proof. or legal support and are therefore insufficient to support the decree dismissing appellant's bill.

It follows from what has been said, that the judgment of the Appellate Court and the decree of the circuit court must be reversed and the cause remanded to the circuit court, with directions to enter a decree in accordance with the prayer of the bill.

*Reversed and remanded, with directions.*