WILLIAM L. B. ABERNATHIE *et al.* Plaintiffs in Error, *vs.* WILLIAM C. RICH, SR., *et al.* Defendants in Error.

*Opinion filed October 26, 1912—Rehearing denied Dec. 5, 1912.*

1. DEEDS—*manual possession of deed by a voluntary grantee is not essential to conveyance of title.* The manual possession of a deed by a voluntary grantee is not necessary to the conveyance of title if he had knowledge of the execution and recording of the deed and assented to it; and such assent is evidenced by the fact that he subsequently mortgaged part of the property.

2. SAME—*recital of consideration cannot be contradicted to invalidate deed.* The recital of consideration in a deed cannot be contradicted by parol for the purpose of invalidating the deed.

3. EXECUTORS AND ADMINISTRATORS—*when administrator may purchase land at foreclosure sale.* An administrator may lawfully purchase for himself, at a foreclosure sale, land which the intestate formerly owned but which he had conveyed before his death.

4. SAME—*what does not show a sale by administrator to himself.* The facts that the purchaser at an administrator's sale was the deputy county clerk under the administrator, and that he sold the land to the administrator some time later for the price he paid, does not show that the sale was by the administrator to himself, where the evidence shows that the purchaser paid the amount of his bid and that there was no collusion or understanding between him and the administrator.

5. HOMESTEAD—*there is no estate of homestead in land upon which householder does not reside.* A householder has no estate of homestead in a tract of land to which he has title but upon which he does not reside, and none survives to his widow and children at his death.

WRIT OF ERROR to the Circuit Court of Union county; the Hon. A. W. LEWIS, Judge, presiding.

RICHARD PEERY, for plaintiffs in error.

D. W. KARRAKER, CHARLES C. CRAWFORD, and GEORGE W. CRAWFORD, for defendants in error.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

The plaintiffs in error filed a bill to set aside a deed executed by James M. Abernathie in his lifetime, a deed executed by his administrator, a master in chancery's deed made upon a sale under a decree of foreclosure of a mortgage executed by James M. Abernathie, and certain subsequent conveyances based upon those deeds. The bill was dismissed and the record is brought here for review.

A former decree dismissing the bill was reversed for want of necessary parties. (*Abernathie* v. *Rich,* 229 Ill. 412.) That defect has now been remedied.

James M. Abernathie died intestate January 12, 1877. He owned two farms, one of 160 acres, (known as the upper farm,) occupied by a tenant, the other of 248 acres, (known as the lower farm,) which he resided upon. The complainants are all of his heirs, except his son James R. Abernathie, who is made a defendant. On September 20, 1876, James M. Abernathie and his wife executed a deed to this son for all the land except 40 acres of the lower farm and a bill of sale of all his personal property, and both instruments were on the same day recorded. This deed is one of those sought to be set aside. On June 10, 1876, James M. Abernathie and wife had executed a trust

deed of 120 acres of the upper farm to Hugh Andrews to secure his note for $371.61. This mortgage was foreclosed after James M. Abernathie's death, the 120 acres were sold by the master in chancery on June 1, 1878, and a deed was executed to the purchaser on February 6, 1882. This is another of the deeds attacked. After James M. Abernathie's death William S. Hanners was appointed administrator *de bonis non* of his estate, and obtained an order for the sale of the 40 acres not included in the deed to James R. Abernathie. He sold the land under this order to Joseph Sampson and made him a deed for it on May 15, 1880. This is another of the deeds attacked. The others are *mesne* conveyances from the grantees in those deeds to the persons now in possession of the lands.

The ground upon which the conveyance to James R. Abernathie is attacked is that it was not delivered; that the grantor executed and acknowledged it and had it recorded without the grantee's knowledge and kept it in his own possession and control until his death, and that the grantee had no knowledge of it until informed, several weeks after his father's death, that it was recorded, whereupon he went to his father's papers, found the deed and took possession of it. The evidence is that James R. Abernathie was not present when the deed was executed; that when James M. Abernathie and his wife started to the home of Esquire Gassaway to make the deed the wife did not want to do it, because she said if her husband should die she and her children would be left without a home. Her husband insisted and she went unwillingly, crying. The deed was executed and acknowledged before Esquire Gassaway and is the statutory form of quit-claim deed, without any reservations. After it was recorded James M. Abernathie sent to the recorder's office and got the deed and had it when he died. It is alleged in the bill that the deed was made for the purpose of enabling James R. Abernathie to raise money to pay the debts of James M. Aber-

nathie then due, and that the property, after the payment of debts, was to be the property of the latter's widow and heirs. No proof of such purpose was introduced. James R. Abernathie testified that the first he knew of this deed was when he was told about it, three or four weeks after his father's death, by William S. Hanners, one of the defendants, who was at that time county clerk and had seen the record of the deed and who afterward acquired title to all the land. As to his knowledge of the making of the deed he is contradicted by other witnesses and by his own acts. On December 13, 1876, a month before his father's death, he mortgaged the land to the trustees of schools to secure his note for $145, and on January 27, 1877, he filed an inventory as administrator of his father's estate, in which he stated that the "real estate was deeded to James R. Abernathie during the lifetime of James M. Abernathie, now deceased." James R. Abernathie denies making the mortgage to the trustees of schools, and also has no recollection of making a deed of part of these lands to N. B. Collins, Samuel Spring and Charles Crowell on June 5, 1878, though both conveyances were regularly acknowledged and immediately filed for record. His testimony impresses us as untrustworthy. These transactions occurred more than twenty-five years before they were questioned by the filing of this bill, and the parol statements and conversations occurring thirty years before the witnesses were called upon to testify about them, by which it is sought to disprove the facts apparently shown by the record, are too uncertain to overcome the record, and are insufficient, after such lapse of time, to set aside an apparently valid deed. The manual possession of the deed by the grantee was not necessary to the conveyance of the title. If he had knowledge of the execution and recording of the deed and assented to it the delivery was sufficient, and he did assent by mortgaging a part of the property. James R. Abernathie gave no consideration for the convey-

ance, but the deed purports to be made in consideration of $4000, and such recital of the consideration cannot be contradicted by parol for the purpose of invalidating the instrument. *Gillespie* v. *Fulton Oil and Gas Co.* 236 Ill. 188.

The objection to the title through the master's deed on the foreclosure sale is based on the charge that the defendant Hanners purchased at that sale while he was administrator *de bonis non* of James M. Abernathie's estate. Since we have held the deed was delivered, neither the estate nor the heirs of James M. Abernathie had any interest in the property, and there was no legal objection to its purchase by the administrator for himself.

The bill charges that the administrator's sale of the 40 acres to Sampson was really a sale to the administrator himself, and therefore may be set aside. Sampson bought the land for $45, and about a year later conveyed it to Hanners, the administrator, for the same price. He was a deputy county clerk under Hanners. The evidence shows that he paid the amount of his bid and that there was no collusion or understanding about the land between him and Hanners. There was nothing in their relation which made the purchase by Sampson unlawful, and it cannot, in the absence of evidence, be held to have been made for Hanners and not for himself.

It is insisted that the administrator's sale was invalid because the widow and minor children of James M. Abernathie had a homestead right in the 40 acres of less value than $1000. The 40 acres sold were the north-east quarter of the south-west quarter of section 3. The evidence is that the residence of the family was on the north-west quarter of the north-west quarter of the section. That tract had been conveyed by James M. Abernathie more than three months before his death and the homestead right extinguished. He had no homestead in the tract of which he retained the title but upon which he did not reside, and none survived to his widow and children.

Other questions are argued in the briefs, but in the view we have taken of the evidence they need not be considered. The bill is based upon the allegation that the deed from James M. Abernathie to James R. Abernathie was not delivered, and that allegation not being sustained, other charges become immaterial.                 *Decree affirmed.*