CHISM *et ux. v.* HOLLIS *et al.*\*

(Division A. Nov. 12, 1928.)

[118 So. 713. No. 27368.]

---

\*Corpus Juris-Cyc References: Mines and Minerals, 40CJ, section 591, p. 997, n. 76; section 672, p. 1056, n. 56.

*A. L. Ford,* for appellants.

*Teat & Cox,* for appellees.

774

Argued orally by *A. L. Ford,* for appellant, and *Harold Cox,* for appellee.

McGowen, J. Chism and wife, appellants here, complainants in the court below, filed their bill in the chancery court of Monroe county against K. L. and P. M. Hollis, appellees here, defendants in the court below, seeking a cancellation of a certain gas and oil lease executed by them in favor of the appellees, and alleging that the appellees procured the lease by fraud, and that same was void because not supported by valuable consideration.

The appellees filed an answer to the bill, denying the fraud, and also denying that the lease was not supported by a good and valuable consideration.

The court below found that the appellees were not guilty of any fraud in the transaction; that the lease contract was supported by valuable consideration, and dismissed the bill.

The lease contract reads as follows:

"Agreement, made and entered into the 29th day of May, 1925, by and between J. T. Chism & wife, Lula Chism, of ————, hereinafter called lessor (whether one or more) and K. L. & P. M. Hollis, hereinafter called lessee. Witnesseth: That the said lessor, for and in consideration of one dollars cash in hand paid receipt of which is hereby acknowledged, and of the covenant and agreement hereinafter contained on the part of the lessee to be paid, kept and performed, has granted, demised, leased and let, and by these presents does grant, demise, lease and let unto said lessee for the sole and only purpose of mining and operating for oil and gas and of laying pipe lines and building. tanks, powers, stations and structures thereon to produce, save and take care of the said products, all that certain tract of land situated in the county of Monroe, state of Mississippi, described as follows, to-wit:—North one-half of northeast quarter, sec. 15, range 17, township 13, and containing eighty acres more or less. It is agreed that this lease shall remain in force for a term of ten years from this date, and as long thereafter as oil or gas or either of them is produced from said land by the lessee. In consideration of the premises, the said lessee covenants and agrees: 1st. To deliver to the credit of the lessor free of cost, in the pipe line to which they may connect their wells, the equal one-eighth part of all oil produced and saved from the leased premises. 2nd. To pay lessor twenty-five dollars each year in advance, for the gas from each well where gas only is found, while the same is being used off the premises, and lessor to have gas free of cost from any such well for stoves and their inside lights in

the principal dwelling house on said land during the time by making their own connections with the well at their own risk and expense. 3rd. To pay lessor for gas produced from any oil well and used off the premises at the rate of one hundred fifty dollars per year, for the same time during which such gas shall be used, said payments to be made each three months in advance. If no well be commenced on said land on or before the 1st day of January, 1928, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay, or tender to the lessor, or to the lessor's credit in the Bank of Sulligent, at Sulligent, Ala., or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of five cents per acre which shall operate as a rental and cover the privilege of deferring the commencement of a well twelve months from said date in like manner and upon like payment or tenders the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only privilege granted to date when said rental is payable aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all rights conferred. 4th. If, as the result of any exploration under the contract, any other minerals than oil and gas shall be found in quantities deemed by the lessee to be paying, then he shall have the right to mine for and produce the same, paying lessor one-tenth of the net proceeds resulting from the sale thereof. Should the first well drilled on the above-described land be a dry hole, then, and in that event, if a second well is not commenced on said land within twelve months thereafter, this lease shall terminate as to both parties, unless the lessee, on or before the expiration of said twelve months shall resume the payments of rentals in the same amount

and in the same manner as hereinbefore provided, and it is agreed that upon the resumption of the payment of rentals as above provided, that the last preceding paragraph hereof, governing the payment of rentals and the effects thereof, shall continue in force just as though there had been no interruption in the rental payments. If the said lessor owns a less interest in the above-described lands than the entire and undivided fee-simple estate therein, then the royalties and rentals herein provided for shall be paid the lessor only in proportion which their interest bears to the whole and undivided fee. Lessee shall have the right to use, free of cost, gas, oil and water produced on said lands for all operations thereon, except water from wells of lessor. When requested by lessor, lessee shall bury their pipe line below plow depth. No well shall be drilled nearer than two hundred feet from the house or barn now on said premises without written consent of the lessor. Lessee shall pay for damages caused by their operations to growing crops on said land. Lessee shall have the right, at any time, to remove all machinery and fixtures placed on said premises, including the right to draw and remove casings. If estate of either party, hereto is assigned and the privilege of assigning in whole or in part is expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in the ownership of the land, or the assignment of rentals or royalties shall be binding on the lessee until after lessee has been furnished with a written transfer or assignment, or a copy thereof; and it is hereby agreed that in the event this lease shall be assigned as to a part or parts of said described lands, and the assignee or assignees of such part or parts shall fail or make default in the payment of the proportionate part of the rentals due from him or them such default shall not operate to defeat or affect this lease, insofar as it covers a part or

parts of said lands upon which the said lessee or any assigns thereof shall make due payments of said rental. Lessor hereby warrants and agrees to defend the title to the lands herein described and agrees that the lessee shall have the right, at any time, to redeem for lessor, by payment, any mortgages, taxes, or other liens on the above described lands, in the event of default of payment by lessor, and be subrogated to the rights of the holder thereof.

In testimony whereof we sign this 28th day of May, 1925.

"J. T. Chism.
"Lula Chism."

This instrument was duly acknowledged and recorded in the chancery clerk's office on the day of its execution.

Appellant's grounds for reversal are as follows: (1) A contract optional as to one party is equally optional as to both parties, and, where a contract is terminable at the will of one party, it is also terminable at the will of the other party, there being no mutuality of obligation; and (2) the sum of one dollar is a nominal consideration, and, where no other consideration passed, it is insufficient to support the contract.

On the first proposition it was alleged, and the evidence establishes, that the appellants, before the expiration of the two and one-half year period, notified the appellees that they would not longer be bound by the contract, and undertook to terminate it.

This gas and oil lease was an executed contract, and, if supported by a valuable consideration, was binding upon the appellants, and could not be revoked by them at their will. And, so far as the contract is concerned, it being conceded by counsel for the appellant that this court cannot reverse on the question of actual fraud, this contract was acknowledged, delivered, and received from the lessor by the lessee, and placed on record; hence it

was a completed, executed contract, and not subject to revocation or cancellation at the will of the lessor.

As to the second proposition, that the down payment of one dollar was a nominal payment, and not sufficient to support the lease contract, we do not think it is maintainable, upon a review of the authorities. In its inception, the only certain consideration stipulated to move from the lessor was the down cash payment of one dollar.

From May 29, 1925, the date of the instrument until January 1, 1928, thereafter, by its terms, the lessee had the right to bore wells for oil and gas, and, if oil and gas were discovered, the lessor was to have certain rights and benefits as set forth in the contract above, but, on or before January 1, 1928, the lessee had the option, if he did not bore for oil or gas, to pay five cents as rental for the lands for the purposes set forth in the lease, and annually thereafter had the right to renew the lease by the payment of said sum.

This lease contract is what is denominated in the text-books, and by many authorities, as an "or lease" as contradistinguished from an "unless lease."

Appellants cite the cases of *Smith* v. *Cauthen,* 98 Miss. 746, 54 So. 844, and *Hollister* v. *Frellsen,* 148 Miss. 568, 114 So. 385, as sustaining their position.

*Smith* v. *Cauthen, supra,* might be conceived to be in point, but an examination of the case there under review demonstrates that it is not. It was an option contract for the sale and advertising of certain lands, the consideration being one dollar "and his listing and advertising my property for sale." The court held, in that case, that one dollar was a nominal consideration, and, as we understand the opinion, that the real consideration was the listing and advertising of the property for sale. The agent had not listed and advertised the property, and the court held that the consideration of one dollar was a nominal consideration, which is obvious. In

the instant case, the contract here submitted recites a down payment of one dollar cash as a consideration, and, before the expiration of the term, the right vested in the lessee to pay five cents per acre for a continuance of the lease. It is undisputed that this amount was paid into the bank at Sulligent, Ala., and the cases cited are not applicable to an executed contract.

Willingham on Law of Oil and Gas, p. 107, section 67, has this to say in reference to the down payment of one dollar:

"The down payment is ordinarily the cash consideration recited in the lease. Considerable litigation has turned upon the question as to whether the down payment was sufficient consideration to support the lease. It is now definitely settled law in practically every jurisdiction that the down payment supports all of the terms and conditions of the lease, and that a down payment of one dollar is sufficient consideration both in law and in equity, whether the lease be an 'or' lease, or an 'unless' lease. Otherwise stated, regardless of the form of the lease, if it is based upon the down payment of one dollar as consideration, it is sufficient."

This statement is supported by the weight of authority, and, especially, the cases of *Guffey* v. *Smith,* 237 U. S. 101, 35 S. Ct. 526, 59 L. Ed. 856; *Allegheny Oil Co.* v. *Snyder* (C. C. A.), 106 F. 764; *Poe* v. *Ulrey,* 233 Ill. 56, 84 N. E. 46; and *Gillespie* v. *Fulton Oil Co.,* 236 Ill. 188, 86 N. E. 219.

Appellants cite also the case of *Eclipse Oil Co.* v. *South Penn Oil Co.,* 47 W. Va. 84, 34 S. E. 923. In that case, the lease under consideration by the court was very similar to this, but there was no down payment of one dollar, which is a material distinction in the light of the fact that for this eighty acres of land the appellants agreed that, at the end of a two and one-half year term, five cents per acre, or four dollars per annum was ade-

quate rental thereof during the ten-year period. There is no fraud here. This lease imposes a possible burden on appellants' land. The parties were legally capacitated to contract. This court does not make contracts for such parties, and, under such circumstances, cannot substitute its opinion of what would be advantageous to the parties for their solemn agreement, and, whether wise or unwise, the parties must remain bound thereby. To hold otherwise would, in a measure, constitute the court the guardian of the unwise. This step we cannot take.

*Affirmed.*