**ARMSTRONG et al. v. SOUTHERN PRODUCTION CO., Inc. et al.**

No. 13059.

United States Court of Appeals Fifth Circuit.

May 26, 1950.

Rehearing Denied June 16, 1950.

Joseph E. Brown, Natchez, Miss., Ogden K. Shannon, Fort Worth, Tex., for appellants.

Edmund L. Brunini, Vicksburg, Miss., Harry L. Logan, Jr., Fort Worth, Tex., Hobert Price, Dallas, Tex., for appellees.

Before HUTCHESON, Chief Judge, and BORAH and RUSSELL, Circuit Judges.

HUTCHESON, Chief Judge.

The suit, for a declaration as to, and for enforcement of, rights under a written contract of date August 8, 1947,[1] which had been entered into by and between the defendants, Armstrong, et al., and Southern Production Co., was brought by Southern and its assignee, Cook Production Co., as plaintiffs.

The claim was: that the contract was a lawful and valid one; that all of the obligations imposed upon Southern by it had been complied with, including the deposit of the estimated drilling costs of the first well; but that defendants had refused to deposit their one-half thereof, had declined to execute the oil and gas lease they had agreed to execute, and had warned plaintiffs not to enter upon the lands for the purpose of operating them for oil and gas as it had been agreed could and should be done.

Many and various defenses, some of fact and some of law, were put forward. Because, however, the district judge, on ample supporting evidence, decided against the defendants all of the fact issues, as well as all of the law issues, and all have been abandoned except the three relied on mainly below and wholly here for a judgment in their favor, none of the defenses except these three will be set out here.

The first of these was: that the provisions of paragraph II,[2] of the contract, that "the drilling operations shall not be commenced until each of the parties hereto places or deposits in escrow * * * his and its one-half of the agreed estimated

---

1. The contract had to do with the leasing and development for oil and gas of 4000 acres of land in Mississippi.

2. "Operator agrees that within thirty (30) days from the date the hereinafter mentioned money is placed in escrow as hereinbelow provided for, it will commence, or cause to be commenced, operations for the drilling of a well in search of oil, gas or other minerals, * * *; provided, however, such drilling operations shall not be commenced until each of the parties hereto places or deposits in escrow in the First National Bank in Shreveport, Louisiana, his and its one-half (½) of the agreed estimated cost of drilling and completing said well to production, including the

cost of drilling and completing said well to production", put it in the power of either party to render the agreement inoperative by failing or refusing to agree; that it is impossible for the law to attach any obligation to the agreement; and that the agreement must be regarded as illusory and unenforceable, both because wanting in mutuality and because indefinite under the Mississippi Statute of Frauds, Code 1942, § 264.

The second one was that Par. XI[3] of the agreement, providing in substance that either party might be relieved from all obligations and liabilities, also renders the contract unilateral and unenforceable.

The third was that plaintiff, "Southern", had violated Par. XII[4] of the contract by assigning part of its interest to "Cook", without first giving Armstrong the opportunity to buy it, and that such violation placed plaintiff in default and thus prevented it from seeking the equitable remedy of specific performance.

The district judge, carefully canvassing each of these positions in turn, determined each of them against plaintiffs.

As to the first, citing many authorities,[5]

---

cost of building the necessary road, and the parties hereto agree that, Except as may hereinafter be provided, such sums shall be so deposited on or before December 1, 1947 * *. *, Provided, However, if the Pure Oil Company shall on or before November 1, 1947, commence operations for the drilling of an additional well * * *, then said money shall not be deposited in escrow unless said well is completed as a well capable of producing oil, gas or other minerals in paying quantities * * *.

"And provided further that if the said additional well of the Pure Oil Company * * *, shall not be completed either as a well capable of producing oil, gas or other minerals or as a dry hole, but is still in process of being drilled, on November 1, 1947, then the time for depositing the sums of money in escrow * * * shall be extended from December 1, 1947, to a date one (1) month after the said additional well of Pure Oil Company shall be completed as a well capable of producing either oil or gas or other minerals in paying quantities; as is provided for in the preceding paragraph of this Section II, if the said additional well of the Pure Oil Company shall be completed as a dry hole whether prior to or after November 1, 1947, this contract and the lease covered hereby shall ipso facto cease and terminate, and the parties hereto shall be released of all obligations hereunder."

3. "Subject to the provisions herein contained, this agreement shall remain in force for the full term of the attached 'Exhibit A' and of any renewal or extensions thereof whether by production or otherwise, provided that if any party hereto so desires it may be relieved from all obligations and liabilities thereafter to accrue under this contract by assigning, conveying and transferring to the other party hereto all of its rights, title, and interest in its working interest or leasehold estate in said land, together with the withdrawing party's interest in all wells, casing, material, equipment, fixtures and personal property belonging to the joint account, but such assignment shall not relieve said party from any obligations or liability accruing or incurred prior to the date thereof."

4. "If at any time during the life of this agreement either party hereto should receive a bona fide offer for the sale of any or all of its working interest in said land or any part thereof or interest therein and the well or wells located thereon from a purchaser ready, able and willing to buy the same, the party desiring to sell shall notify the other party hereto in writing of such offer and such other party shall have the prior right to buy said working interest for the same price and on the same terms and conditions contained in said bona fide offer for a period of twenty-one (21) days from and after receipt of written notice by said party of said offer of purchase, said written notice setting forth the price, terms, and conditions of said bona fide offer and the name or names of said party or parties making said offer; provided, however, the preferential right or rights to purchase given in this article shall not apply where any party desires to mortgage its interest or dispose of its interest to a subsidiary or affiliate of such party or dispose of same by merger, reorganization, consolidation or sale of such party's assets."

5. Elliott, Contracts, Vol. 1, p. 290; 12 Am.Jur., Contracts Sec. 64, p. 556; 17 C.J.S., Contracts, § 318, pp. 735–736; 1 Williston, Contracts, Rev. Ed. 1946, Sec. 37, p. 100; Citizens' Bank v. Frazier, 157 Miss. 298, 127 So. 716.

including the Mississippi case of Pugh v. Gressett, 136 Miss. 661, 101 So. 691, 38 A. L.R. 678, the district judge concluded: that, construed in the light of the undisputed facts as to the subject matter, and the circumstances surrounding the making, of the contract, it was not a mere "agreement to agree" on a matter involving fancy, taste, or sensibility, where the only determining standard was personal opinion, such that, the contract lacked finality and definiteness of obligation. Rejecting the view that the agreement was a mere preliminary and indefinite step in an effort to negotiate a contract, he found that it was, on the contrary, a definite, good faith agreement that each of the prime contractors would deposit one-half of the sum arrived at on the basis of existing and readily obtainable data and information, furnishing, indeed fixing, a recognized standard.

He concluded, in short: that the controlling, the dominant, factor in the challenged provision was not the word "agreed" but the word "estimated"; that it was contemplated by the parties that the cost could and would be estimated under standards prevailing in the drilling industry, taking into consideration the location of the proposed well, and the prevailing cost of materials and labor and other incidental costs that a reasonably prudent driller would take into consideration in his estimate.

Finding: that, under the agreement, neither party could arbitrarily, or in the exercise of bad faith, by refusing to agree or renouncing the contract, avoid his obligations under it; and that, since, under the reasonably definite standards and data available, the cost could and would have been estimated with reasonable accuracy, the one refusing or making no effort to agree would be bound to put up his one-half of the cost so estimated by the other, he completely rejected the defense of indefiniteness and want of enforceable obligation.

Of the defense that Par. XI, with its provisions for release, rendered the contract unilateral, the district judge was of the opinion that the defense was wholly without merit because the contract as a whole made it clear that there was an absolute obligation upon plaintiffs capable of being enforced as to the original well, and that the paragraph had reference to relief from obligations after the initial well or wells had been drilled.

As to the third point, the transfer to Cook in violation of Par. XII, plaintiff, admitting that Armstrong did know of it several months before he undertook to denounce the contract—not, however, on this ground—insist that, though he did not denounce the contract because of this transfer, nor at any time complain of it, he was not obligated to do so, and his failure to do so could not, in the absence of an express agreement, deprive him of the priority rights given him under the paragraph.

This point gave the judge little concern. He disposed of it against defendants by the finding, that Armstrong knew that the transfer had been made to Cook and not only did not object to it, but, in fact, acquiesced in it, and that if he had ever had any enforceable complaint, he had waived it.

Appellants are here vigorously insisting that, in ruling as he did, the district judge in effect made a new contract for the parties, his decree not enforcing an existing obligation but creating one which did not theretofore exist.

The appellees, on their part, point to the undisputed fact that the points Armstrong now makes against the contract were not made by him when, in his letter of April, 1947, he undertook to induce the plaintiffs to renegotiate, in effect make a new trade, urge upon us: that this is another of those cases of which the books are too full, of a seller seeking escape from his contract in order to obtain a better one by grasping at shadows and putting forward defenses having neither legal nor equitable substance; that none of the points made against the decree are sound; that, indeed, this is a peculiarly appropriate case for the equitable relief granted.

Citing the long line of cases fully supporting their view: that modern decisional

tendency is against lending the aid of courts to defeat contracts on technical grounds of want of mutuality; and that where escape from obligations is sought on these grounds, courts will, where it is reasonably possible to do so, find a contract definite and enforceable; they insist that the decree should be affirmed.

■ We agree with appellees. It is true that the provision of the contract for estimating the drilling costs of wells subsequent to the first one does leave out the word "agreed", does speak only of estimated costs, but this, we think, is without significance. In both instances, the thing agreed upon is that the cost is to be estimated, and it is quite plain that within the authorities [6] dealing with such situations, the agreement was definite, binding, and enforceable.

Defendants could not, by failing and refusing to participate in making and agreeing on the estimate, render the agreement indefinite and unenforceable.[7]

■ As to Par. XI, the surrender clause, in addition to the reasons the district judge gave for his conclusion that it did not render the contract unilateral, and, therefore unenforceable, there is the conclusive reason that the agreement of Armstrong to deposit one-half of the estimated costs of the first well was supported by consideration [8] moving from Southern in the form of heavy expenses for abstracts and attorneys' fees, and also the $10 paid by Southern for the execution by Armstrong of the December 30, 1947, instrument ratifying, confirming, and extending the contract of August, 1947.

■ As to the claim that the transfer from Southern to Cook was in violation of Par. XII, and plaintiffs thereby became disentitled to specific performance, it is quite clear that this point is wholly without merit. As the undisputed evidence shows and the court found, Armstrong, after learning of the transfer, made no objection whatever to it, but, on the contrary, invoked the transfer as a precedent for his doing likewise in making a transfer to Danciger.

The judgment appealed from was right. It is

Affirmed.

6. McFadden & Oates v. Ray, 184 Miss. 352, 185 So. 245; Shepherd v. Union Central Life Ins. Co., 5 Cir., 74 F.2d 180; Morris v. Ballard, 56 App.D.C. 383, 16 F.2d 175, 49 A.L.R. 1461; Fidelity Fuel Co. v. Martin Howe Coal Co., 7 Cir., 15 F.2d 470; Albrecht Co. v. New Amsterdam Cas. Co., 7 Cir., 164 F.2d 389; National Grain Yeast Corp. v. City of Crystal Lake, 7 Cir., 147 F.2d 711; Pugh v. Gressett, 136 Miss. 661, 101 So. 691, 38 A.L.R. 678; Crossland v. Kentucky Blue Grass Seed Growers' Ass'n, 6 Cir., 103 F.2d 565; 1 Williston on Contracts. Sec. 48, p. 136; 5 Williston on Contracts, Sec. 1424, p. 3987; Restatement of the Law of Contracts, Ch. 12, Sec. 370, pp. 674-75.

7. 3 Williston on Contracts, Sec. 675(a).

8. Walker, 7 Tex.L.Rev. 21; Vol. 2 Summers Oil & Gas, Perm. Ed., § 242, pages 85–86; Chism v. Hollis, 152 Miss. 772, 118 So. 713; Guffey v. Smith, 237 U.S. 101, 116, 35 S.Ct. 526, 59 L.Ed. 856; Williston on Contracts, Rev. Ed. Vol. 1, p. 365; Merchants' Life Ins. Co. v. Griswold, Tex.Civ.App., 212 S.W. 807.