# CHARLESTON

STARCHER BROS. *v.* JEFF DUTY *et al.*

Submitted September 13, 1906.   Decided February 19, 1907.

1. SPECIFIC PERFORMANCE—*Objections to Relief—Inequality—Indefiniteness of Contract.*

Specific performance of an option contract for the purchase of land will not be decreed in favor of the optionee against the optionor, even though the optionee is free from any intention to take an unfair advantage, if the actual result would be an inequality resulting from ignorance or inexperience, or where the terms of the contract are so indefinite, or assented to with such lack of caution, that the enforcement of the contract would produce an inequality not foreseen by the defendant. (p. 374.)

2. PERPETUITIES—*Suspension of Alienation—Real Property*.

Such an option contract, good for one year, and providing for extending it for another year on payment of a stipulated sum, and containing also a provision that the optionee "may have this option and agreement so extended from year to year upon the payment of said sum annually as aforesaid," and extending its provisions to the heirs, assigns, executors and administrators of both parties, is void by the Rule against Perpetuities. (p. 377.)

3. SAME.

Such an option contract is void from its inception, and anything done by the parties thereto designed to carry the contract into effect which is auxiliary thereto will be treated as unauthorized and inoperative. (p. 377.)

4. SAME—*Contracts Limited*.

Whenever a contract raises an equitable right in property which the obligee can enforce in chancery by a decree for specific performance, such equitable right is subject to the Rule against Perpetuities. (p. 378.)

5. SAME.

The mere fact that a contingent interest may be released by a person in being, and that a good title may thus be made, is not enough to take the case out of the Rule against Perpetuities. (p. 378.)

Appeal from Circuit Court, Lincoln County.

Action by Starcher Bros. against Jeff Duty and others. From a decree in favor of defendants, plaintiffs appeal.

*Affirmed.*

CHARLES E. HOGG and WALTER PENDLETON, for appellants.

WYATT & GRAHAM, for appellees.

MILLER, JUDGE:

The plaintiffs below have appealed from the decree of the circuit court of Lincoln county, denying them the specific execution of an option contract for the sale and purchase of a tract of 170 acres of land. The court below, by its decree of December 8, 1905, denied the relief prayed for, dissolved the injunction awarded, and dismissed the plaintiffs' bill.

The contract, dated April 5, 1902, was signed by Jeff Duty and Elizabeth, his wife, by their marks, and was acknowledged before Philip Hager, Jr., a notary public, April

7, 1902. The contract acknowledges a consideration of eleven dollars paid down, and was conditioned on the optionees electing to take and accept the land on or before April 5, 1903, and in that event that they should thereupon pay the optionors at the rate of six dollars per acre for all the land, to be ascertained by a survey made in the usual way at the expense of the purchasers, to whom the sellers were to execute an apt and proper deed of general warranty, clear of all incumbrances. The contract also contained the proviso that Starcher Brothers might prior to April 5, 1903, pay to the first parties, or deposit "to their credit in the Huntington National Bank, their heirs, assigns or personal representatives, the sum of $10.00, which shall constitute and be in full consideration for the extension of this option and agreement for the period of one year from said last mentioned date, and upon payment thereof this contract and option shall be so extended." There is then superadded this further provision, and the one upon which this litigation mainly depends: "*And said Starcher Brothers may have this option and agreement so extended from year to year upon the payment of said sum annually as aforesaid.*" By the last clause of the contract also, "*it is understood that the terms and stipulations of this agreement shall extend and apply to the heirs, assigns, executors and administrators of both parties hereto.*"

This record shows that this contract and other contracts for lands taken from other persons residing in the same locality, including the one taken from J. F. Duty, a brother of Jeff Duty, were prepared on printed forms provided by the optionors. At the time the contracts with Jeff Duty and J. F. Duty were procured C. W. Starcher, a member of the firm of Starcher Brothers, and one Bee, employed by the firm to assist in taking these contracts, met Jeff Duty and his brother J. F. Duty on Broad Branch in Lincoln county, where they agreed to give an option on their lands for the period of two years, upon terms substantially as set forth in the written contract, but declined to make them run for a longer period. And they both say that the contracts as executed were explained to them by Starcher and Bee to be limited to two years. There is, however, some conflict of evidence on this subject—not important, in our view of the

case, to be considered upon this appeal. There is no denying the fact that Jeff Duty and his wife Elizabeth, and his brother J. F. Duty, were all ignorant and illiterate persons. Neither Jeff Duty nor his wife could read or write. Philip Hager, Jr., the notary public who was employed by Bee, the agent of Starcher Brothers, to procure the acknowledgments to these contracts, testifies that he was instructed by Bee not to read the option contracts to these people.

As soon as these contracts were taken and acknowledged, they were promptly recorded in Lincoln county. The optionees did not elect to take the land the first year, but instead, and prior to April 5, 1903, they deposited ten dollars in the bank as stipulated in the contract, carrying the option over to April 5, 1904—the period of two years which, according to the professed understanding of the optionors, was the extreme limit of time to which it would go. But these prospective purchasers did not elect to take the land during the second year; but, depending upon the provision of the contract for extending it from year to year, they again and prior to April 5, 1904, made a second deposit of ten dollars in the bank to the credit of optionors, which they received from and receipted for to the bank—thereby, according to the terms of the contract, extending it to April 5, 1905. It is also shown that Starcher Brothers made a third deposit in the bank to the credit of Duty prior to April 5, 1905, but which was never accepted by Duty; and in their bill the plaintiffs charge, and it is proven, that prior to April 5, 1905, they gave notice to Duty of their election to take the land and proposed to make the survey and demanded a deed, which Duty refused to execute. But in the meantime and in March, 1905, after notifying the plaintiffs that his contract with them had expired, Duty and wife undertook to sell the timber on the land to the defendants, the Williams Lumber Company, a co-partnership, for seven hundred and fifty dollars, Duty depositing the deed and the lumber company the cash payment and the notes for the deferred payments in a bank at Huntington until all incumbrances should be removed. Besides their defense that the contract did not give the plaintiffs an option to purchase beyond April 5, 1904, and reciting their inability to read the contract and their dependence

upon and trust in the plaintiffs to give them proper information and instructions in regard to the meaning of the contract, they further say that, if they executed a writing containing any provision for annual renewals, *"they were induced to extend the same by misrepresentation and fraud."* They also plead illegality of the provision of the contract for annual extensions of the option.

The record, therefore, presents two questions for our consideration: First, and conceding it to be valid, should a court of equity under all the circumstances specifically enforce the contract; and, second, is the contract a valid one which the court, with judicial discretion, and if so disposed, can enforce? It seems quite clear, although conceding that Duty and wife may have been overreached and induced by misrepresentation and fraud to execute a contract to run for more than two years, nevertheless, having accepted the ten dollars deposited to their credit in March, 1904, to extend the contract for a year beyond the two years, they ought to be concluded thereby and required to execute the same, and they will be unless there is something inherent in the contract itself and so fatal to its life and validity as to forbid its enforcement. If Duty and wife had stood upon their contract, as a contract for two years, and had declined to accept the money deposited to extend it for a longer period, and considering the very unusual and unreasonable proviso for annual extensions, and their disadvantages of ignorance and inexperience, we would have been disposed upon this ground alone, regardless of the question of the validity of the contract presented by the record, to withhold the remedy of specific performance. This remedy will be denied, even though the plaintiff was free from any intention to take an unfair advantage, if the actual result is an inequality, resulting from old age, mental weakness, poverty, ignorance, inexperience, sex, etc., or where the terms of the contract are so indefinite, or assented to with such lack of caution, that the enforcement of the contract would produce an inequality not foreseen by the defendant. 6 Pom. Eq. Jur. (Ed. 1905) 785.

This brings us to the consideration of the pivotal question in this case, viz., the validity or invalidity of the contract. It is claimed by the defendants that the provision of the con-

tract, "and said Starcher Brothers may have this option and agreement so extended from year to year upon the payment of said sum annually as aforesaid," and which provision by the terms of the contract is made to "extend and apply to the heirs, assigns, executors and administrators of both of the parties hereto," creates such a present right to an interest in the land which may arise at a period beyond the legal limit, as to bring the contract within the rule against perpetuities, and that the contract is therefore absolutely void and unenforceable, at law or in equity, at any period of its existence.   On the other hand the plaintiffs insist, in the first place, that Duty and wife, by accepting the second payment of ten dollars paid into bank to their credit prior to April 5, 1904, thereby estopped themselves from asserting that the contract was to run only for two years; second, that it is permitted to the owner by contract to suspend his right of disposition of his property only so it shall not offend against the law of perpetuities, and that to bring the contract within this rule the alienation must be restrained for the entire period of the life of the owner and twenty one years and a fraction thereafter, and which they claim is not the legal effect of the contract.   The authorities relied on in support of this theory are *Lowther Oil Co.* v. *Guffey*, 52 W. Va. 88; *Rease* v. *Kittle*, 56 W. Va. 269; *Brush* v. *Beecher*, 110 Mich. 597, and other like cases relating to contracts for the perpetual renewal of leases.   It is claimed that this contract partakes of the nature of such lease contracts.   The answer to this argument, however, is that leases of land like those considered in the authorities cited create vested estates in the lessees, and the covenant for perpetual renewal is one which runs with the land, without any restraint upon the right of alienation by the lessor of his property subject to the lease, and hence the authorities relied on are inapplicable.   Gray's Rule Against Perp. section 230.

The best definition of a perpetuity and the one most generally adopted by the courts and text writers is that of Mr. Lewis, (Lewis on Perpetuities 164,) which is as follows: "A future limitation, whether executory or by way of remainder, and either of real or personal property, which is not to vest until after the expiration of or will not necessarily vest within

the period fixed and prescribed by the law for the creation of future interests, and which is not destructible by the persons for the time being entitled to the property subject to the future limitation." Hogg's Eq. Pr., section 554. Chief Justice Gibson in *Hilliard* v. *Miller*, 10 Pa. St. 164, says that "a perfect definition of a perpetuity has not been given, and the nearest approach to it is found in Lewis on Perpetuities." Mr. Gray, Rule Against Perp., sections 329, 330, on the authority of the leading case of *London & S. W. R. Co.* v. *Gomm*, 20 Ch. D. 562, says: "Whenever a contract raises an equitable right in property which the obligee can enforce in chancery by a decree for specific performance, such equitable right is subject to the rule against perpetuities." The English case cited by Gray is particularly applicable, for in the deed from a railroad company the grantee covenanted with the grantor that he, his heirs and assigns, would at any time on receipt of one hundred pounds reconvey the land to the company. The grantee subsequently sold and conveyed the property, and the railroad company subsequently sued the then owner for a specific execution of this contract. Kay, Judge, who decided the case below, while regarding the rule against perpetuities, did not think it applicable to that case, because in his opinion the contract did not create any estate or interest, properly so called, in the property, nor contain any covenant running with the land or binding on the purchaser. On appeal, however, Jessell, M. R., with whom Sir James Hannon and Lindley, L. J., concurred, and reversing the decree below, held that the option to purchase gave an equitable interest which was within the rule against perpetuities, and that, judged by that rule, it was void. The court said Justice Kay was in error in thinking that the contract did not create any interest in land. See Gray's Rule, section 485.

The mere fact that a contingent interest may be released by the persons in being, and that a good title may thus be made, is not enough to take the case out of the rule. *Winson* v. *Miller*, 157 Mass. 362.

This rule against perpetuities is aimed not only against restraints on the alienation of present interests, but is also directed against the creation of future interests in property.

21 Eng. Rul. Cases 159, note; Gray's Rule, Ch. VII. Unless, therefore, we can read into this contract some terms of limitation requiring the optionees to exercise the right to take the property within some reasonable time, not too remote, it is clearly within the rule and must be declared void. To attempt this would be to make a new contract for the parties, for they have provided that the option may be extended annually to an indefinite period, and may be to a time beyond which the rule against perpetuities will not allow. The contract, therefore, is illegal, and was void from its very inception, and everything done by either of the parties designed to carry the contract into effect which is auxiliary thereto must be considered as unauthorized and inoperative. *Fosdick* v. *Fosdick*, 6 Allen 48.

Such being the law of the contract, we hold that it was void and unenforceable from the beginning, and that it was given no vitality by payments made and received for annually extending it.

We therefore affirm the decree of the court below, with costs to the appellees.

*Affirmed.*