### Davenport, et al. v. Schoenfelt, et al.

(Decided April 19, 1921.)

### Appeal from Allen Circuit Court.

1. Mines and Minerals—Suit to Cancel Oil Lease.—A lessor is not entitled to a cancellation of an oil lease for non-development where the lessee has drilled more than one well on a lease of small acreage, and has rigged said wells up with pumping machinery, built tanks, and pumped the wells with reasonable regularity for months before the institution of the suit for cancellation.

2. Mines and Minerals—Forfeiture of Lease.—A lessee will not be allowed to hold a lease for an indefinite time without development where the lessor demands that development proceed and refuses to accept rentals in lieu thereof.

3. Mines and Minerals—Recovery of Value of Oil Lost by Defective Tank.—The value of oil pumped from wells into tanks and thereafter lost through a defective tank furnished by the operator may be recovered by the lessor to the extent of his royalty interest therein.

HARPER & DENTON for appellants.

GILLIAM & GILLIAM, COLEMAN TAYLOR and S. R. CREWSON for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming in part and reversing in part.

This is an appeal from a judgment of the Allen circuit court entered in the case of Davenport and wife

against Schoenfelt and Stock, holding an oil and gas lease made by the Davenports valid and binding and dismissing their petition, which prayed a cancellation of the lease and the recovery of damages. The Davenports appeal.

The oil lease, which bears date October 25, 1912, was for a term of ten years and "as long thereafter as oil and gas or either of them is produced therefrom by the party of the second part, his successors or assigns."

The lease also contains the following provisions:

"The party of the second part agrees to complete a well on said premises within one year from the date hereof or pay at the rate of ten cents an acre per year, for each additional year such completion is delayed from the time above mentioned for the completion of such well until a well is completed. The above rental shall be paid to the parties of the first part in person or by check, deposited in the post office to his address or deposited or mailed to his credit in the        Bank at        . And it is agreed that the completion of such well shall be and operate as a full liquidation of all rental under this provision during the remainder of the term of lease."

The lease was kept in force by the payment of the rentals until it was assigned to one McNutt, who caused three or four wells to be drilled on the premises, at least two of which were producers of oil though in small quantities. Pumping machinery was placed upon the lease, tanks erected for the storage of oil, and oil pumped from the wells into the tanks. There was no pipe line connected with the lease and the operators were unable to market even the small quantity of oil produced. Finally in March, 1919, McNutt sold the lease, wells and equipment to appellees Schoenfelt and Stock, who assumed control and management and continued the pumping of the wells. Shortly thereafter a pipe line was projected to the lease but the oil then in the tanks was so old and thick that the pipe line people would not accept it, and appellees, in order to enliven the oil, pumped it back into a gas well, and again pumped it into the tanks. Appellant Davenport was in the employ of appellees as pumper and had charge of the lease. When the oil was pumped into the tanks from the wells, the tank being in bad condition, allowed the oil to leak out and waste.

As Davenport, the lessor, was entitled to one-eighth thereof as royalty he sues herein for $500.00 damages, al-

leging his one-eighth of the total oil output which he places at 170 barrels to be worth that sum. Crude oil of this quality was then worth in the market less than $4.00 per barrel.

After appellees obtained the lease appellants gave them notice to drill certain off-set wells along the property line between the Davenport lease and the Fisher lease, on which were some wells producing a small quantity of oil, but appellees declined to do so, giving as their reason the small production of the adjoining wells and the likelihood of its being a loosing venture. But in August, 1919, appellees began the drilling of a well on the lease and had a contract for a second well. The first well was completed December 5, 1919, but this suit to cancel the lease was commenced in November while the well was being drilled.

The cancellation of the lease is sought on the grounds that lessees have failed to drill and develop the property or pay the rentals, according to the lease contract. The averments of the petition on this subject are:

"They state that by the terms and conditions of said lease the lessees were obliged to drill and develop said land for oil and gas within a period of 12 months from the date of its execution, or thereafter pay an annual rental of 10 cents per acre. They state that the main and true consideration for said lease was the agreement on the part of the lessees to drill and explore for oil upon said premises and not the nominal rental of ten cents per acre.

"They state that on the — day of — 19 — the lessees began drilling on said lease and drilled two or three small oil wells, but the amount of oil they would produce is unknown to plaintiffs because the defendants have failed and refused to properly rig up these wells or to pump them and as a result of this failure to properly develop and properly rig up said lease that plaintiffs have been unable to derive any money whatever in the way of royalties or otherwise; that the defendants J. E. Stock and C. E. Shoenfelt, or either of them, has not paid or tendered to plaintiffs any money in the way of rentals or for any other purpose within the past two years, and that by reason of their failure to operate, produce oil and gas and to market the same and their failure to pay and tender rentals in lieu of production, said lease has expired and the rights of defendants thereto terminated."

All this is put in issue by the answer, which also pleads the agreement and acquiesence of lessors in appellees' purchase and operation of the lease in bar of lessors' right to claim a forfeiture.

The lease contract under consideration is in terms much like other oil leases, the principal consideration for the execution of which we have held to be speedy development, and not the nominal sum paid for the lease or the small rental reserved. Our public policy demands progressive development of all our mineral resources such as oil, gas, coal and other mineral, and long term leases held by persons who do not in good faith contemplate early development are not and should not be countenanced by the courts, where they hinder or delay the progress of industry. Pursuing this policy and recognizing well established principles of equity we have held that an oil lease which provides for speedy development and which was induced by that condition may be avoided by the landowner, if after reasonable time has expired for the drilling of wells, none have been in good faith commenced, and the lessor has refused to accept rentals in lieu of development and has notified the holder of the oil lease that a cancellation of the contract will be demanded if he does not within a reasonable time thereafter begin in good faith the drilling of a well or wells. We have also held that the drilling of a dry hole or a producing well from which no oil is marketed will not suffice to hold a lease for an unreasonable time after the landowner gives the notice aforesaid and demands a cancellation of the contract. Monarch Oil & Gas Co. v. Richardson, 30 K. L. R. 824; Hughes, et al. v. Busseyville Oil & Gas Co., 180 Ky. 545. To the same effect are the following cases: Young v. McQuhenny, 116 S. W. 728; 151 S. E. 662.

But the facts of this case do not bring it within this rule, for it is admitted that the lease had several wells drilled on it, all of which were very small producers. In addition, the wells were rigged up and pumped for months before the bringing of this action. Thousands of dollars had been expended by the lessees and their predecessors in an effort to make the lease a producing one from which the landowner would realize royalties. In all this work Davenport, the lessor, had acquiesced and for a long time helped in the work without complaint or objection.

It would have been very inequitable and unjust to have cancelled the lease on the petition of appellants, and the chancellor did not err in refusing so to do and in entering the decree from which the appeal is prosecuted, unless he erred in refusing to adjudge Davenport the value of one-eighth of the oil stored in the tanks and which was lost through a defect in the container.

We think the proof shows with reasonable certainty that the oil lost through the leakage of the tank amounted to about 170 barrels, one-eighth of which belonged to Davenport as royalties.

Schoenfelt tentatively agreed to pay Davenport for this oil. It is also shown that Davenport was in charge of the lease and oil at the time of the loss, but it does not satisfactorily show that he was in any way responsible therefor, but the loss appears to have resulted from a defective tank furnished by appellees. The loss, therefore, should fall on them and not on Davenport.

To this extent only is the judgment reversed; the ascertainment of the value of one-eighth of the oil lost, and judgment for that amount in favor of Davenport.

In all other respects the judgment is affirmed.