LLOYD'S ESTATE et al. v. MULLEN TRACTOR & EQUIPMENT Co.

(In Banc.  Oct. 27, 1941.)

[4 So. (2d) 282.  No. 34696.]

Gordon & Gordon, of Liberty, for appellants.

Green & Green, of Jackson, and **J. S. Atkinson**, of Shreveport, La., amici curiae.

Fred A. Anderson, Jr., of Gloster, for appellee.

Argued orally by **C. T. Gordon**, for appellant, and by **F. A. Anderson, Jr.**, for appelleee, and **Garner Green** as amicus curiae.

**McGehee, J.,** delivered the opinion of the court.

This appeal is from a final decree wherein the court below cancelled an oil and gas lease as a cloud upon the appellee's title to approximately 2,000 acres of land in Amite County, Mississippi, and assigned as grounds therefor (1) that it is a perpetual lease, contrary to the public policy of the State of Mississippi, (2) that it is in violation of Section 2117, Code of 1930, (3) that the lessee, his heirs and assigns, had violated an implied covenant to develop the property for oil and gas within a reasonable time, and (4) that such lease is so ambiguous in its nature, and so contradictory in its scope, that the same is void.

The lease was executed in favor of D. C. Lloyd on the 11th day of August, 1925, by the then owners of the land, Isaac, Mary and J. W. Fryman, for a consideration of $1 and "other valuable considerations," receipt of which is acknowledged, and the record shows that this lease contract was duly placed of record during that same year. Thereafter, the title of the land itself passed from the Frymans through mesne conveyances to the appellee, Mullen Tractor and Equipment Company, the intervening conveyances reciting in each instance that the land was being sold "subject to a certain oil and gas lease;" and the conveyance to the immediate predecessor in title of the appellee recited that "This deed of conveyance is subject to a certain oil, gas and mineral lease heretofore sold and conveyed to D. C. Lloyd, with the understanding, however, that any royalty retained by the grantors in said oil and gas lease or owned by the grantor herein is hereby conveyed to the grantee," and the deed of conveyance of the land to the appellee, dated February 9, 1934, recites that it was likewise executed subject to such lease.

The granting clause of the lease recites that the lessor "hereby grants, bargains and sells all the oil and gas in and under the land hereinafter described, and grants,

demises, leases and lets said land, itself, unto the lessee, his successors and assigns'' for the purpose of operating for and producing oil and gas thereon, and the lease provides for the necessary rights of way and other privileges incident to or convenient for the proper development of the land for oil and gas; also that the rights and privileges granted unto the lessee, its successors and assigns, are granted ''for the term of five years from the date hereof, and as much longer as oil, gas or either of them shall be produced from said lands by the lessee in paying quantities.''

It is then provided in the second paragraph of the lease that: ''If no well is commenced on said land on or before the 11th day of August, 1930, this lease shall terminate as to both parties, unless the lessee, on or before that date, shall pay or tender the lessor the sum of $100.00 in the manner hereinafter provided, which payment or tender shall operate as a rental for twelve months from and after the date last above stated, and the same shall also cover the right and privilege in the lessee to defer the commencing of said well during said period of months. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively.'' And it is further recited therein that the down payment received from the lessee ''is a good, valid and substantial consideration and sufficient in all respects to support each and every covenant contained herein, including specifically the option granted the lessee to extend this lease from time to time during the term thereof upon the payment or tender of the rentals hereinbefore provided for.'' It is then agreed that the lessee will immediately offset all paying oil or gas wells drilled on land adjoining this tract, and that ''no implied covenants regarding the measure of diligence to be exercised by the lessee in the drilling of said land during the original five-year term hereof shall be read into this lease, it being the express agreement of the parties that the provisions of this paragraph set forth

the exclusive conditions under which the lessee shall hold this lease for said original term of five years.'' The paragraph referred to also reserves unto the lessor a one-eighth royalty in the oil and gas.

The lease contract, or any interest therein, or any portion of the acreage of the land involved, are made assignable by the terms of the instrument itself. In fact, the original lessee, D. C. Lloyd, did assign certain undivided interests in the same to different persons, who are appellants herein along with the estate of D. C. Lloyd, deceased.

The lease was filed as an exhibit to the bill of complaint, and the demurrer of the defendants thereto having been overruled, the case proceeded to the final decree upon the record as made by the several conveyances constituting the chain of title and which duly appeared of record at the time the appellee obtained its title to the land, and also upon an agreed statement of facts showing that no actual operation of any nature looking toward the discovery of oil and gas on the land has been conducted; that no well has been drilled in search of oil and gas on this land, or within a radius of ten miles thereof during the life of the lease; and that no producing oil, gas, or other mineral wells have been discovered within a radius of fifty miles of said tract of land. Hence, the duty to offset any well on adjoining land, as required by the lease, is not alleged to have been violated, and is not therefore involved in the case.

It was also agreed upon the trial that all rental provided for in the lease had been paid in accordance with the terms of the lease, and it appears from the record, and is conceded in the briefs of counsel, that the appellee, Mullen Tractor and Equipment Company, has received and accepted the annual rental of $100 to extend the term of the lease, which was paid in advance each year from August 11, 1934, when it acquired title to the land, to August 11, 1939, inclusive, the payment of such annual rental from August 11, 1930, to August 11, 1933, inclusive,

having been received and accepted by the appellee's predecessors in title; and that therefore when this suit was filed on December 7, 1939, to cancel the said oil and gas lease, the complainant had received and accepted the annual rental for the year beginning August 11, 1939, and ending August 30, 1940.

It is contended by the appellee, however, that its acceptance of these annual rentals during the period aforesaid was in ignorance of the covenants and agreements in the said lease contained, and that hence it should not be bound thereby. This position of the appellee is manifestly untenable, since the lease duly appeared of record at the time the land was purchased by it, and the title to the land was accepted subject to the terms and provisions of such lease.

But we are not content to rest our decision of this case on the question alone of whether the suit was prematurely brought or as to whether the complainant is now estopped to deny the right of the lessee to further renewals of the lease. In view of the great number of oil and gas leases now in force throughout the state, the validity of which may depend upon the considerations on which the decree here appealed from was predicated, we deem it both expedient and proper at this time, when the oil and gas industry in this state is still in its infancy and precedents are few wherein these considerations have been involved in the construction of contracts of this specific nature, that we should determine the validity of this particular lease in the light of those questions which are urged as grounds for its alleged invalidity.

In Am. Juris., Vol. 32, para. 967, p. 812, the rule as to the validity of leases providing for perpetual renewals is stated as follows: "Although there is some contrary authority, the generally accepted view is that a provision clearly giving the lessee and his assigns the right to perpetual renewals is valid in the absence of some stautory prohibition, and will be enforced by the courts, although such a provision in a lease is not favored by the courts

and a lease will be construed as not making such a provision unless it does so clearly. It has been generally held that a provision in a lease for perpetual renewal is not violative either of the rule against perpetuities or of statutes limiting the period during which the absolute power of alienation may be suspended. The reason for this is that the covenant to renew may be taken as part of the lessee's present interest. It is obvious that a perpetual lease, or a lease containing a covenant for perpetual renewal, is not a restraint or limitation upon the power of alienation of the fee, for there are at all times persons in being who by joining can convey the fee. However, a special statute against perpetuities which provides in effect that any disposition of real estate is void where the right of alienation is restrained beyond the period of the life of the owner and twenty-one years and fractions thereof, renders void a lease giving the lessee, his heirs, assigns, executors, and administrators the right to extend it from year to year.''

Applying this rule in the instant case, the lease contract in question clearly gives the lessee and his assigns the right to perpetual renewals, and there is no statutory prohibition against the making of such a lease. There is no restraint or limitation in the lease upon the power of alienation by the lessee, his heirs or assigns, for any particular time or beyond the life of any particular person or persons in being; indeed there is no restraint in the lease at all against alienation. At all times there will be persons in being holding the lease or interests therein who may join the owner of the land and convey the fee. Moreover, by the very terms of this lease, as hereinbefore shown, the leasehold interest in the minerals conveyed may be assigned as often as desired.

It is true that the law does not favor perpetual leases and that the intention to give the right to perpetual renewals must appear in clear and unequivocal language, and that a lease will not be construed to create such a right unless the language employed clearly and unam-

biguously indicates that it was the intention and purpose of the parties to do so; however, the language of the lease now before us clearly indicates such an intention.

The rule hereinbefore quoted from Am. Juris., supra, is similarly stated in 16 R. C. L., sec. 391, at page 887, as follows: "The generally accepted view, however, is that a provision clearly giving the lessee and his assigns the right to perpetuate renewals is valid in the absence of some statutory prohibition, and will be so construed and enforced by the courts. And the practical construction placed on a covenant for renewal by the parties, as evidenced by their act in granting a number of renewals, will be given great weight with the courts, when called upon to construe the provision, as showing that it was intended to confer a right to a perpetual renewal." Hence, the action of the appellee and of its predecessors in title of the land in accepting the annual rental of $100 per year in advance for a number of renewals under the lease here in question, after the expiration of the five-year original period, may be resorted to on the issue as to whether the lessor intended to confer a right to perpetual renewals under the contract, and as to whether the subsequent owners of the land have so construed it, if indeed it were necessary to look beyond the clear and explicit language used by the parties thereto.

In the textbook on the Rule Against Perpetuities, Gray (3 Ed.), p. 202, it is stated that: "It is no objection to a lease that it contains such a covenant (for perpetual renewal), if the entire control of the covenant is in the hands of those persons who have vested interests under the lease." This author cites numerous decisions to support the text, and then calls attention to the case of Morrison v. Rossignol, 5 Cal. 64, 65, holding the contrary, and which case is referred to in the annotation in 3 A. L. R. 495, of the case of Thaw v. Gaffney, 75 W. Va. 229, 83 S. E. 983, in this manner: "Save in a single instance (Morrison v. Rossignol, 5 Cal. 64, supra), it has been generally held that perpetual leases containing a coven-

ant for perpetual renewal are not violative, either of the rule against perpetuities or of statutes limiting the period during which the absolute power of alienation may be suspended.'' Professor Gray further states that this view has been spoken of as an exception to the rule against perpetuities, and then says: ''but it seems hardly necessary to create any exception to meet the case—the covenant to renew is part of the lessee's present interest.'' The lessor in the case at bar, for instance, expressly agrees that the down payment made to him ''is a good, valid and substantial consideration . . . to support each and every covenant contained herein, including specifically the option granted the lessee to extend this lease . . . upon the payment or tender of the rentals.'' And even though it may be very difficult to find a logical justification for holding a lease containing the right to perpetual renewal to be valid *as an exception to the rule against perpetuities,* the fact remains that such leases have been held valid for some reason by a long series of judicial decisions by the courts which promulgated and have kept alive the rule itself; a sufficient reason for these decisions, and the one frequently given, being the lessor is not precluded by such a lease from disposing of the land at will nor is the lessee hindered in selling or assigning the lease; and, moreover, because the lessor and lessee, by uniting in a conveyance, may freely and without restraint convey both the fee and the leasehold interest. For that reason it was held in Re Hubbell Trust, 135 Iowa 637, 113 N. W. 512, 13 L. R. A. (N. S.) 496, 14 Ann. Cas. 640, that a lease for any number of years, whether 99 or 999, is not in violation of the statute against perpetuities, where there is no restraint in the lease against alienation. In the case of Thaw v. Gaffney, supra, reported in 75 W. Va. 229, 83 S. E. 983, 3 A. L. R. 495, a lease of land for the purpose of building thereon two dwelling houses, and which provided that the lessee is to have and hold said land for and during the term of five years, or as much longer thereafter as

he should pay the sum of $50 per annum in advance, was held to give the lessee or his assigns the option to perpetuate the lease indefinitely by paying the stipulated annual rental in advance, without violating the rule against perpetuities. Numerous decisions supporting this general rule are cited in the annotation of this case in 3 A. L. R. 495, including many English cases.

It is true that it is stated in Thaw v. Gaffney, supra, that ''where a special statute against perpetuities provides in effect that any disposition of real estate is void where the right of alienation is restrained beyond the period of the life of the owner and twenty-one years and fractions thereof, a lease is void which provides that the lessee has the option to extend it from year to year, and that this provision shall apply to the heirs, assigns, executors and administrators of both parties,'' citing Starcher Bros. v. Duty, 61 W. Va. 373, 378, 56 S. E. 524, 9 L. R. A. (N. S.) 913, 123 Am. St. Rep. 990, and which latter case is the basis of the same statement found in 32 Am. Juris., para. 967, p. 812, hereinbefore quoted in full in this opinion, but an examination of the said case of Starker Bros. v. Duty, supra, discloses that there was involved in that decision a perpetual option to purchase land in fee simple by the holder of the option, his heirs, assigns, etc., such as to preclude any right of alienation by the owner as long as the holder of the option, his heirs, assigns, etc., might see fit to have the same extended indefinitely from year to year upon payment of the sum of $10 annually. No lease was involved, and this decision therefore wholly fails to support the statement as found in said paragraph hereinbefore quoted by us from American Jurisprudence and from the decision of Thaw v. Gaffney, supra; the perpetual option to buy the land involved in Starcher Bros. v. Duty being erroneously referred to in each of these two instances as a ''lease,'' and there being no other decision in support thereof cited either in the text or under the same statement found in the opinion of the Court in Thaw v. Gaffney case. In fact, the early

case of Morrison v. Rossignol, 5 Cal. 64, heretofore re-
ferred to, seems to stand alone, so far as our investigation
discloses, in holding that the right of perpetual renewal
provided for in a lease, containing no restraint against
alienation, violates the rule against perpetuities. But
the Courts of Indiana and Kentucky have seen fit to
relieve the lessor of the obligation of oil and gas leases
which contain a provision for perpetual renewal and
delay in drilling by the payment of rental, not because
such a provision violates the rule against perpetuities, but
on the theory of an implied covenant to develop the land
for oil and gas within a reasonable time. Such relief has
been granted, however, only after notice in advance to
the lessee that the lessor will not accept further rental
and a demand upon the lessee that drilling be commenced
within a reasonable time. The appellee cites and relies
upon a number of cases from those jurisdictions, and
especially from Kentucky, including the cases of Daven-
port v. Schoenfelt, 191 Ky. 234, 238, 229 S. W. 1043, and
Kentucky Coke Co. v. Smith, 207 Ky. 485, 269 S. W. 558;
and Warren Oil & Gas Co. v. Gilliam, 182 Ky. 807, 809,
207 S. W. 698, but in the latter case the Court said: "In
construing such leases, we have taken the position that
the main consideration is the development of the property
and the payment of the royalty, and that the lessee can-
not, in opposition to the wishes of the lessor, refuse to
begin the development of the property for an unreason-
able time, and extend the lease indefinitely by the pay-
ment of a mere nominal rent. Monarch Oil, Gas & Coal
Co. v. Richardson, 124 Ky. 602, 99 S. W. 668 . . .;
Dinsmoor v. Combs, 177 Ky. 740, 198 S. W. 58. However,
the right of the lessor to forfeit the lease for nondevelop-
ment cannot be arbitrarily exercised. He must first no-
tify the lessee that he will no longer accept the annual
rentals and permit his land to remain idle and undevel-
oped, but will require the lessee to execute the contract
according to the intention of the parties by beginning its
development in good faith, and if, after such notice and

demand, the lessee does not begin the development within a reasonable time, the lessor may then have the lease forfeited. Monarch Oil, Gas & Coal Co. v. Richardson, supra. Here, the lessor did not, at any time, demand that the lessee begin operations and give him a reasonable opportunity to do so. That being true, there is no basis for the contention that the lease in question was forfeited because of the lessee's failure to begin operations." But the doctrine established by these cases, whereby a covenant on the part of the lessee to develop the land for oil and gas within a reasonable time is implied by the Court in contravention of an express covenant entitling the lessee to delay drilling a well by the payment of the annual rental stipulated for, is not only at variance with all other jurisdictions but apparently with all rules of construction of contracts generally. It is elementary that an express stipulation upon a matter excludes the possibility of an implication upon the same subject, Glassmire Oil & Gas Leases and Royalties (2 Ed.), p. 202, sec. 55; Merrill, Covenants Implied in Oil and Gas Leases, p. 272, sec. 115, et seq. And it is expressly stated in the case of Brimmer v. Union Oil Co., 10 Cir., 81 F. (2d) 437, 440, 105 A. L. R. 454, that: "An express covenant upon a given subject, deliberately entered into without fraud or mutual mistake, excludes the possibility of an implied covenant of a different or contradictory nature," citing Brewster v. Lanyon Zinc Co., 8 Cir., 140 F. 801; Shell Petroleum Corporation v. Shore, 10 Cir., 72 F. (2d) 193; Freeport Sulphur Co. v. American Sulphur Royalty Co., 117 Tex. 439, 6 S. W. (2d) 1039, 60 A. L. R. 890.

With further reference to the Ky. cases on this question, it is stated in 2 Summers Oil & Gas (Permanent Edition), sec. 397, p. 322, that: "In 1920 the Kentucky Legislature enacted a statute designed to prevent the practice of implying a condition in an oil and gas lease to develop, after notice, in contravention of the express provision of the lease for delay in drilling by the payment of rental."

Carroll's Kentucky Statutes, 1936, Secs. 3766b-4 and 3766b-4a.

Moreover, this Court in approving an oil and gas lease in the case of Chism v. Hollis, 152 Miss. 772, 118 So. 713, containing a provision that the same "shall remain in force for a term of ten years from this date, and as long thereafter as oil or gas or either of them is produced from said land by the lessee," said in the course of its opinion that: "This lease imposes a possible burden on appellants' land. The parties were legally capacitated to contract. This court does not make contracts for such parties, and, under such circumstances, cannot substitute its opinion of what would be advantageous to the parties for their solemn agreement, and whether wise or unwise, the parties must remain bound thereby."

Also, in numerous timber cases: Butterfield Lumber Co. v. Guy, 92 Miss. 361, 46 So. 78, 15 L. R. A. (N. S.) 1123, 131 Am. St. Rep. 540; Nichols v. Day, 128 Miss. 756, 91 So. 451; Williams v. Batson, 186 Miss. 248, 187 So. 236, 128 A. L. R. 1138, this Court has declined to imply a covenant to cut and remove timber within a reasonable time either where the conveyance was made without limitation on the time in which the same must be cut and removed or where the grantee was given the right to cut and remove the same beyond the expiration of a fixed period by paying a penalty each year for a renewal of such right. Even though it be contended that the conveyances of timber are not analogous to oil and gas leases so far as the estate conveyed is concerned the fact remains that they do support the rule that the Court will not imply a covenant to remove within a reasonable time where the parties to the conveyance have expressly contracted for the right to defer such removal from year to year, and for a valuable consideration to be paid therefor.

Moreover, in the Nichols case, supra, the Court held that the rule against perpetuities has no application to a fixed interest, but only to such interests as may not vest within the prescribed period of time, citing Gray's Rule

against Perpetuities (3 Ed.), sec. 205, 1 Tiffany on Real Property (2 Ed.), sec. 183.

Whatever interest was acquired by the lessee in the case at bar by virtue of the lease in question was conveyed to him to take effect in praesenti, and there is no limitation therein to postpone the vesting of such interest until a future date, or that can be said to result in a restraint against alienation either of the mineral rights or of the fee itself. Sec. 2117, Code of 1930, prohibiting an estate in fee tail has no application to the validity of the lease here in question; nor is the enabling feature of this statute which authorizes a person to "make a conveyance or a devise of lands to a succession of donees then living, and upon the death of the last of said successors to any person or any heir," here involved. The lease here does not deal with a succession of lessees or donees. Whatever interest or estate was conveyed by this lease in the minerals contracted for is in the nature of a determinable fee, Restatement Property, Secs. 16 and 23, and subject to be defeated only by the failure of the lessee, his heirs or assigns, to remove the same within the original period of five years, or otherwise to pay thereafter in advance the annual rental provided for therein. The Court said in the case of Stokely v. State ex rel. Knox, 149 Miss. 435, 115 So. 563, 566, that a lease "which conveyed the oil and gas under the land and granted the exclusive right to conduct operations to produce and dispose of the same . . . and let the land for the same purpose . . . is, in legal effect, a lease of the land and a conveyance of an interest therein." It was also held in that case that under such an instrument "the title to seven-eighths of the oil in the land is vested in the grantee . . ." In the case at bar the lease not only "grants, bargains and sells all the oil and gas in and under the land," but also "leases and lets said land, itself, unto the lessee, his successors and assigns."

The Supreme Court of Texas held in the case of Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex.

160, 254 S. W. 290, 29 A. L. R. 566, that the ordinary lease operates as a present conveyance of a corporeal estate in the oil and gas in place; and that since the lessee's interest might endure forever, and at the same time is automatically terminated upon the happening of certain events specified in the lease, the estate created is a determinable fee. This being true, it would necessarily follow that the lease now before us does not in any manner violate the said Section 2117, Code of 1930, the enjoyment of that conveyed not having been therein postponed.

Finally, it is urged that in view of the economic importance of oil and gas in the present day scheme of things, and especially during a world crisis, the public has an interest in the development of our lands for oil and gas, and that the Court should therefore hold the lease in question void as being detrimental to the general welfare. However, under existing laws, if these minerals should revert to the owner of the land upon a cancellation of the lease the government is without power to require such owner or any subsequent lessee to drill for and remove the same. We must look to our Constitution, statutes, and the previous decisions of the Courts for the public policy that would render the lease in the instant case invalid; and in doing so we find that both at common law, as applied in England and in this country, and under some of the earlier statutes of this state the right to perpetual renewals of a lease is expressly recognized. In the case of Street v. Columbus, 75 Miss. 822, 23 So. 773, 774, wherein Sixteenth Section land was involved, the Court said: "In some instances by legislative enactment, these long leases are renewable, at the pleasure of the lessees, forever." And in Chapter 3, Laws of 1848, is found an Act to provide for the leasing of Chickasaw School Lands "for the term of 99 years, renewable to the lessee, his heirs or assigns, forever." Therefore instead of being in violation of the public policy of this state, leases providing for the right of perpetual renewal have

been authorized by statute; and they are neither prohibited by the Constitution, except as to certain lands held by the state for specific purposes, nor condemned by any previous decision of the Court.

From what we have said already on the question of whether the lessee, his heirs or assigns have violated any implied covenant to develop the land for oil and gas within a reasonable time, it is unnecessary to further discuss the third ground on which the court below cancelled the lease, and we think that the pertinent provisions of the lease itself, hereinbefore quoted, likewise disclose that the fourth ground assigned for the cancellation of the lease is not well taken.

The lease having been executed for a lawful purpose, by persons capable of making a valid contract, for a sufficient legal consideration, without fraud or mistake, and in language clearly expressing the understanding and agreement of the parties, the Courts have no other alternative than to uphold and protect the rights and privileges therein granted, and to recognize and enforce the obligations thereby assumed.

Reversed and decree here for appellants.