REVISED - April 24, 1998

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 96-60837
_____

RALPH E. WILLIAMSON,
and his wife DAPHINE WILLIAMSON,
LESLIE WILLIAMSON,
JUDY WILLIAMSON DUNAWAY,
BONNIE WILLIAMSON MORRIS,
JAMES WILLIAMSON,
RALPH E. THOMAS,
SAMMY L. SMITH,
S. E. SMITH,
ROBERT SIDNEY DOBBS, JR.,
FLORA R. DOBBS,
BOBBY G. SMITH,
MARION P. SMITH,
and GRACE M. SMITH,
all residents of Lowndes County, Mississippi,

Plaintiffs-Appellees,

versus

ELF AQUITAINE, INC., a Delaware Corporation,

Defendants-Appellants.

---

Appeal from the United States District Court
for the Northern District of Mississippi
(No. 1:93-CV-255-S-D)

---

April 1, 1998

Before POLITZ, Chief Judge, GARWOOD and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

For this diversity action, the interlocutory appeal at hand concerns whether, under Mississippi law, lessors/royalty owners are entitled to royalties from the proceeds of the "nonrecoupable" settlement of a "take-or-pay" contract between a lessee/producer and a gas purchaser. On cross-motions for summary judgment, the

district court held for the lessors/royalty owners. We **REVERSE** and **RENDER**.

I.

Appellees are lessors/royalty owners under six oil, gas, and mineral leases for the Caledonia Field in Lowndes County, Mississippi. Appellant, Elf Aquitaine, Inc., the lessee, drilled and sold gas from two Caledonia Field wells. Elf entered into two separate purchase and sales contracts with the Tennessee Gas Pipeline Company (TGP). Under these contracts, Elf was required to sell, and TGP was required to buy, 90 percent of Elf's delivery capacity. Among other things, these contracts contained "take-or-pay" provisions, which required TGP to take or, if failing to take, to in any event pay for a large minimum volume of gas that Elf made available for delivery, and to take (recoup) the undelivered, but paid for, gas in succeeding years.

The term "take-or-pay" is somewhat misleading; the purchaser always must make payment for a minimum amount of available gas, but may exercise an option to take (recoup) the gas at a later date. These provisions are mutually beneficial: the producer is assured a steady income; the pipeline company, a steady supply.

Due to various market forces in the early 1980s, the natural gas market experienced an increase in supply but a decrease in demand. Consequently, pipeline companies were in a financially unfavorable position of being locked into long-term, take-or-pay contracts with producers, requiring pipeline companies to purchase at high prices large volumes of gas, which they were unable to

2

resell on the flooded market. *See **Koch Hydrocarbon Co. v. MDU Resources Group, Inc.**, 988 F.2d 1529 (8th Cir. 1993); John S. Lowe, *Defining the Royalty Obligation*, 49 SMU L. REV. 223 (1996); Bruce M. Kramer, *Liability to Royalty Owners For Proceeds from Take-or-Pay and Settlement Payments*, 15 E. MIN. L. FOUND. § 14.01 (1994).

In 1983, due to these adverse market conditions, TGP followed a growing trend among similarly situated pipeline companies and unilaterally began refusing to take, much less to pay for, the full minimum available gas amount, in clear breach of its contracts with Elf, among others. As a result, Elf and TGP entered into a settlement agreement in 1985 (the 1985 settlement), kept confidential from the lessors, which resolved certain breach of contract claims that Elf had against TGP.

However, due to continuing market difficulties, TGP continued in breach of contract. (For example, in December 1985, TGP advised Elf that its gas sales at one point had been reduced to the lowest level since 1944.) TGP refused to meet its take-or-pay obligations, but also refused to release the gas Elf was contractually committed to sell to TGP. By 1987, TGP owed Elf over $27 million in take-or-pay obligations under various contracts, including the two involved in this case.

Consequently, Elf and TGP entered into a second settlement agreement in 1987 (the 1987 settlement), again kept confidential from the lessors, under which TGP made a lump-sum payment of approximately $6.6 million to Elf in consideration for Elf waiving its claims under the take-or-pay contracts. No royalties were paid

to Appellees from this settlement amount. (The 1987 settlement included the following language: "WHEREAS Elf has been requested by [TGP] to reduce prospectively the price, volumes and take-or-pay obligations of gas purchased under the Contracts...." Although the settlement amount was entered in Elf's books as a settlement of take-or-pay obligations, Appellees contend that this settlement was not solely to excuse take-or-pay obligations but to excuse all disputes arising out of the marketing of gas under the leases.)

In conjunction with the 1987 settlement, TGP and Elf also amended the contracts to allow Elf to sell gas from the wells on the open market. Such sales increased immediately, with Elf paying Appellees full royalties from them.

In mid-1993, after becoming aware of the 1985 and 1987 settlements, Appellees filed this action in Mississippi chancery court to recover as royalties a portion of the settlement proceeds. Elf removed the action to federal district court.

With respect to *the 1987 settlement*, the district court granted summary judgment to Appellees, denied Elf's similar cross-motion, and reserved ruling on damages. ***Williamson v. Elf Aquitaine, Inc.***, 925 F. Supp. 1163, 1173-74 (N.D. Miss. 1996). (The court held that the claim based on *the 1985 settlement* was barred by limitations; Appellees do not cross-appeal. ***Id.*** at 1174.)

The district court certified the following issue for interlocutory appeal: "whether, pursuant to Mississippi law, lessors of a mineral interest in gas are entitled to royalties

stemming from the nonrecoupable cash settlement of a take-or-pay contract dispute between a pipeline and a producer". **Williamson v. Elf Aquitaine, Inc.**, No. 1:93CV255-S-D, 1996 WL 671660 (N.D. Miss. July 25, 1996) (unpublished).  Our court initially denied but, upon re-certification granted, Elf's petition for interlocutory appeal. **Williamson v. Elf Aquitaine, Inc.**, No. 96-00268 (5th Cir. Dec. 5, 1996) (unpublished).

## II.

## A.

Appellees/lessors seek certification to the Mississippi Supreme Court.

> In determining whether to exercise our discretion in favor of certification, we consider many factors.  The most important are the closeness of the question and the existence of sufficient sources of state law — statutes, judicial decisions, attorney general's opinions — to allow a principled rather than conjectural conclusion.  But also to be considered is the degree to which considerations of comity are relevant in light of the particular issue and case to be decided.  And we must also take into account practical limitations of the certification process: significant delay and possible inability to frame the issue so as to produce a helpful response on the part of the state court.

**State of Fla. ex rel. Shevin v. Exxon Corp.**, 526 F.2d 266, 274-75 (5th Cir. 1976).

Appellees contend that certification is proper because the issue at hand has not been addressed by the Mississippi Supreme Court and judicial economy would be served.  But, as discussed *infra*, Mississippi case law, which looks to Texas decisions in oil

5

and gas cases, is sufficiently clear to allow this court to decide the issue presented. Needless to say, "[c]ertification is not a panacea for resolution of those complex or difficult state law questions which have not been answered by the highest court of the state". *Transcontinental Gas Pipeline Corp. v. Transportation Ins. Co.*, 958 F.2d 622, 623 (5th Cir. 1992).

In short, this appeal does not fall within the class of "exceptional" cases requiring certification. *See*, *e.g.*, *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 920 F.2d 259, 262 (5th Cir. 1990). Accordingly, certification is **DENIED**.

## B.

Of course, we review a summary judgment *de novo*. *E.g., FDIC v. Myers*, 955 F.2d 348, 349 (5th Cir. 1992). In this regard, the parties stipulated in district court that no material fact issues exist. Therefore, at issue is whether, under Mississippi law, the Appellees are entitled to royalties from the proceeds of the nonrecoupable 1987 settlement of the take-or-pay contracts between Elf and TGP. (As discussed *infra*, under a "nonrecoupable settlement", there is a termination of the pipeline company's right to take gas not taken prior to settlement.) Again, for this summary judgment, as in all instances where we are presented with an issue of law, *see* ***Thompson v. City of Starkville***, 901 F.2d 456, 459 (5th Cir. 1990), we review *de novo*.

For this diversity action, and because the Mississippi Supreme Court has not addressed this issue, we are required to make an ***Erie***-guess as to how the Mississippi courts would apply state

substantive law.  ***Erie R.R. Co. v. Tompkins***, 304 U.S. 64 (1938); *e.g.,* ***Southwestern Engineering v. Cajun Elec. Power Co-op., Inc.*** 915 F.2d 972, 978 (5th Cir. 1990).  In this regard, deference cannot be given to the rulings by the district court, even though it sits in the State whose law is being applied.  ***Salve Regina College v. Russell***, 499 U.S. 225, 238 (1991) ("When *de novo* review is compelled, no form of appellate deference is acceptable.").

Prior to launching this *de novo*/non-deferential exploration, we note, in fairness to the able district court, that some of the key decisions it looked to as bases for its most comprehensive opinion have subsequently been reversed.  In sum, we are exploring ground altered after the district court ruled.

1.

Under Mississippi law, as in general, implied covenants are inapplicable when a contract contains express provisions on that particular issue.  ***Lloyd's Estate v. Mullen Tractor & Equip. Co.***, 4 So. 2d 282, 287 (Miss. 1941).  Therefore, absent ambiguities, Mississippi gives effect to the plain language of the lease, which represents the agreed understanding between the parties.  ***Superior Oil Co. v. Beery***, 63 So. 2d 115, 118 (Miss. 1953).  Accordingly, we look first to that plain language.

Concerning Elf's royalty obligations to Appellees, five of the leases state:

> As royalty, lessee covenants and agrees:
> ... (b) To pay lessor on gas and casinghead gas *produced from said land* (1) *when sold by lessee*, one-eighth of the *amount realized* by lessee, computed at the mouth of the well, or (2) when used by lessee off said land or in

> the manufacture of gasoline or other products, the market value, at the mouth of the well, of one-eighth of such gas and casinghead gas....

(Emphasis added.)  The sixth lease has substantially similar language:

> Royalties to be paid by lessee are: ... (b) on gas, including casinghead gas or other gaseous substance[s], *produced from said land and sold or used*, the market value at the well of one-eighth (1/8) of the gas so *sold or used*, provided that on gas *sold at the well* the royalty shall be one-eighth (1/8) of the *amount realized* from such *sales*....

(Emphasis added.)

Applying Mississippi law, our court's decision in *Piney Woods Country Life School v. Shell Oil Co.*, 726 F.2d 225 (5th Cir. 1984), *cert. denied*, 471 U.S. 1005 (1985), concerned royalty provisions virtually identical to those at hand.  We held that "production" for the purposes of a royalty-bearing oil and gas lease occurs when the gas is brought to the surface and "severed from the land".  *Id.* at 234; *cf. Diamond Shamrock Exploration Co. v. Hodel*, 853 F.2d 1159, 1165 (5th Cir. 1988).  Elf contends that the plain language of the leases requires payment of royalties *only* when gas has been "produced" and "sold".  Appellees focus on the "amounts realized", contending that Elf "realized" two prices for the gas that, subsequent to the 1987 settlement, it produced and sold:  first, the lump-sum, nonrecoupable settlement "price" for the gas it would later produce; and second, the spot market prices from the sale of the same gas when actually produced.  (Based on statements by counsel at oral argument here, as well as Appellees' statement of facts in the pretrial order, it appears that TGP purchased little,

8

if any, of the gas that, post-1987 settlement, was produced and sold.)

Mississippi courts give little guidance on a lessee's royalty obligations in the settlement of a take-or-pay dispute. However, for oil and gas issues of first impression, the Mississippi Supreme Court has long held that it will typically follow decisions of the Texas courts, depending, of course, on "the soundness of the reasoning by which they are supported". *Phillips Petroleum Co. v. Millette*, 72 So. 2d 176, 182 (Miss. 1954).

Texas courts have dealt extensively with the question of when royalties are to be paid in the context of take-or-pay provisions. In a seminal case, *Killam Oil Co. v. Bruni*, 806 S.W.2d 264 (Tex. App.--San Antonio 1991, writ denied) (*Bruni I*), the Texas Court of Appeals held that lessors are not entitled to royalties on proceeds from the settlement of a take-or-pay contract. That decision keyed on the fact that the lease, which is virtually identical to one of the leases at issue here, entitled the lessor to royalty payments for gas "produced", whereas take-or-pay settlement proceeds involve payments for gas *not produced*.

However, especially for "nonrecoupable settlements", the holding in *Bruni I* was arguably called into question in *Hurd Enterprises, Ltd. v. Bruni*, 828 S.W.2d 101, 106-07 n.8 (Tex. App.--San Antonio 1992, writ denied) (*Bruni II*), which stated, in dicta, that "there are cogent arguments concerning the royalty owner's interest in take-or-pay settlement funds, especially when, as here, the settlement *terminates the purchaser's recoupment rights*."

9

(Emphasis added.)  Again, a "nonrecoupable settlement", as in the case at hand, occurs when the settlement terminates the pipeline company's "make-up" rights (*i.e.*, the right to later take gas not taken during the prior period covered by the settlement).  *See Bruni II*, 828 S.W.2d at 106 n.8.

This question was resolved in *TransAmerican Natural Gas Corp. v. Finkelstein*, 933 S.W.2d 591 (Tex. App.--San Antonio 1996, writ denied) (en banc) (*Finkelstein II*); the court found no distinction between recoupable and nonrecoupable settlements, holding that "the royalty owner, who does not shoulder the risks of exploration, production, and development, should not share in the take-or-pay payment".  *Id.* at 599 (citing *Diamond Shamrock*, 853 F.2d at 1167) (quotation and ellipsis omitted).  The court stated: "we reaffirm our decision in *Bruni I* and clarify that a royalty owner, absent specific lease language, is not entitled to take-or-pay settlement proceeds, whether or not gas is sold to third parties on the spot market".  *Finkelstein II*, 933 S.W.2d at 600.

Moreover, *Finkelstein II* held that the "cogent arguments" listed in the dicta in *Bruni II* had "been resolved by *Lenape*'s explanation that take-or-pay payments [do not] represent ... the mere 'pre-payment' of gas suggested by [the *Finkelstein I* panel opinion withdrawn by *Finkelstein II*]".  933 S.W.2d at 599 (citing *Lenape Resources Corp. v. Tennessee Gas Pipeline Co.*, 925 S.W.2d 565, 571-72 (Tex. 1996)).  Turning around the "Elf will receive two payments" argument presented here by Appellees, the court noted that, if royalties were required to be paid on the compromise of a

10

dedication claim, *the royalty owner* would receive "two royalties on the same gas, a right to which he was not entitled under the terms of his lease". ***Id.***

Similarly, ***Independent Petroleum Association of America v. Babbit***, 92 F.3d 1248 (D.C. Cir. 1996), states:

> [T]here is no meaningful distinction between a settlement payment and a recoupable take-or-pay payment in that no gas is actually produced in either case. ... The link between the funds on which royalties are claimed and the actual production of gas is missing.
>
> ....
>
> [W]hen the payments (of either variety) are nonrecoupable, the funds are never linked to any severed gas. Therefore, no royalties accrue on those payments.

***Id.*** at 1259-60 (footnote omitted).

Other recent Texas cases have followed ***Finkelstein II*** and further clarify the state of the law in Texas on the issue of royalty obligations *vel non* in conjunction with nonrecoupable settlements.

***Alameda Corp. v. TransAmerican Natural Gas Corp.***, 950 S.W.2d 93, 97 (Tex. App.--Houston [14th Dist.] 1997, writ denied), held that repudiation damages are not royalty-bearing when, as in the case at hand, royalty obligations are tied to production. In so holding, the court stated that "a royalty owner's right to payment under these circumstances is no longer an open question in Texas". ***Id.*** at 99 (citing ***Bruni II*** and ***Lenape***).

And, ***Condra v. Quinoco Petroleum, Inc.***, 954 S.W.2d 68 (Tex. App.--San Antonio 1997, n.w.h.), relied on ***Bruni II***, ***Finkelstein***

11

*II*, and *Alameda* in holding that proceeds from a nonrecoupable take-or-pay settlement are not royalty-bearing:

> Similar to the repudiation damages considered in [*Finkelstein II*], the nonrecoupable payment in the instant case was not paid for production. Therefore, we hold that the appellants' division orders do not entitle them to royalties on the take-or-pay settlement in this case.

*Id.* at 71.

The state of the law in Texas is clear: absent specific lease language, royalty owners are not entitled to proceeds from take-or-pay settlements, whether recoupable or nonrecoupable. *Accord Condra*, 954 S.W.2d at 71; *Alameda*, 950 S.W.2d at 97–99; *Finkelstein II*, 933 S.W.2d at 597–600. Obviously, Texas case law is not binding on Mississippi courts; but, as noted, it is typically followed by them in oil and gas issues of first impression. *Phillips Petroleum*, 72 So. 2d at 182.

The reasoning evinced in these Texas opinions is sound and consistent with the limited Mississippi law precedent. *See*, *e.g.*, *Piney Woods*, 726 F.2d at 234 (holding that, under Mississippi law, "a gas sale contract is executory and that the sale is executed only upon production and delivery") (citing MISS. CODE ANN. § 75-2-105, *et seq.*); *Palmer v. Crews*, 35 So. 2d 430, 435 (Miss. 1948) (stating that a royalty "consists of a share in the oil and gas produced. It does not include a perpetual interest in the oil and gas in the ground".). Accordingly, that reasoning applies here.

Equitable considerations do not come into play.  As discussed, it is well-established in Mississippi that implied covenants are inapplicable when, as here, an issue is expressly covered by the language in a lease.  *Lloyd's Estate*, 4 So. 2d at 287 ("An express covenant upon a given subject ... excludes the possibility of an implied covenant of a different or contradictory nature.").  Similarly, "[a]s we stated in *Bruni I*, the royalties to which a lessor is entitled must be determined from the provisions of the oil and gas lease".  *Finkelstein II*, 933 S.W.2d at 597.  Therefore, we follow *Finkelstein II*:

> Like the lease in *Bruni I*, [the royalty owner]'s lease is tied to production.  By this language, [the royalty owner] unambiguously limited his right to royalty payments from gas actually extracted from the land. Additionally, without production, [the lessor]'s duty to reasonably market was not triggered.

933 S.W.2d at 598 (internal citation and footnote omitted).

Appellees do not claim to be third-party beneficiaries of the take-or-pay contracts between Elf and TGP.  *See* **Mandell v. Hamman Oil and Refining Co.**, 822 S.W.2d 153 (Tex. App.--Houston [1st Dist.] 1991, writ denied); **Gerard J.W. Bos & Co., Inc. v. Harkins & Co.**, 883 F.2d 379, 382 (5th Cir. 1989) (applying Mississippi law).  And, Appellees do not contend that the 1987 settlement was in bad faith or less than an arms-length transaction.

On the other hand, they do note that, in addition to a claimed implied duty to market, the leases provide that "[l]essee covenants and agrees to use reasonable diligence to produce, utilize, or

market the minerals capable of being produced from said wells". But, as discussed above, and as stated in *Finkelstein II*, "[t]ake or pay is not a benefit which flows from the marketing covenant of a lease". 933 S.W.2d at 600. Furthermore, Appellees do not claim that, post-1987 settlement, Elf has not complied with its express marketing obligation.

### III.

In *Piney Woods*, this court held that, under Mississippi law, the provisions in the lease controlled, even though, in that case, the gas producer was economically disadvantaged. 726 F.2d at 237-38. This time, it appears that it is the royalty owners who are adversely affected by the enforcement of the lease. The summary judgment is **REVERSED**, and judgment is **RENDERED** for Elf Acquitaine, Inc.

*REVERSED and RENDERED*